IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Greene,                  :
           Petitioner      :
                         :
         v.               :   No. 2750 C.D. 2015
                         :   Argued: December 12, 2016
Unemployment Compensation Board  :
of Review,               :
           Respondent   :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE JOSEPH M. COSGROVE, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION
BY JUDGE SIMPSON             FILED: March 10, 2017


In this late appeal case we are asked whether conduct constituting an administrative breakdown must involve the right to or necessity for filing an appeal, or whether the "breakdown" conduct may apply more broadly to other types of misinformation.

In particular, Kenneth Greene (Claimant), now represented by counsel, petitions for review of an order of the Unemployment Compensation Board of Review (Board) that adopted a referee's decision dismissing Claimant's appeal as untimely under Section 501(e) of the Unemployment Compensation Law (Law).[1]  Claimant asserts he is entitled to an appeal *nunc pro tunc* because he

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §821(e).

based his decision not to appeal on misleading information provided by unemployment compensation service center representatives (UC representatives), from the Department of Labor and Industry (Department), who advised him he could not collect unemployment compensation (UC) benefits while also collecting severance pay.[2] For the reasons that follow, we affirm.

## I. Background

Claimant testified he worked for Mondelez Global (Employer) as a material handler before being laid off in May 2015. Referee's Hr'g, Notes of Testimony (N.T.), 10/19/15, at 4-5. Well before the layoff, Claimant learned of Employer's plan to shut down. N.T. at 5. In January 2014, Employer arranged for UC representatives to speak to employees at a town hall meeting about issues related to their layoffs. Id. at 5-6. The UC representatives discussed severance pay. N.T. at 6.

Despite the information received in January 2014 from the UC representatives, Claimant made an initial UC claim in December 2014. Certified Record (C.R.), at Item #1 (Claim Record). Moreover, although he was recalled to work for some time, he re-opened his claim in May 2015. Id. When asked in Question No. 10 of the Claimant Questionnaire whether his union's agreement

---

[2] As discussed below, the law changed regarding whether severance payments were deductible from UC benefits, effective January 1, 2012. Here, UC representatives failed to advise Claimant at a pre-separation meeting that the new severance payment deduction only applied to severance agreements made *after* January 1, 2012. Claimant's severance agreement preceded that date.

with Employer providing for a severance payment existed prior to January 1, 2012, Claimant answered "no." See C.R. at Item #3 (Claimant Questionnaire at #10).[3]

On June 23, 2015, a UC service center sent Claimant a notice of determination advising him that his severance pay was deductible under Section 404(d)(1) of the Law, 43 P.S. §804(d)(1).[4] This resulted in a revised weekly benefit rate of $0 for the claim weeks ending 5/15/15 through 9/12/15, and $0 for claim week ending 9/19/15. In short, Claimant was not eligible for his full weekly benefit amount until the week ending September 26, 2015. C.R. at Item #4.

The notice of determination indicated a right to appeal the determination on or before July 8, 2015. C.R. at Item #4. Claimant testified he received the notice and was aware of the appeal deadline. N.T. at 7. However, Claimant testified, based on the information received from the UC representatives in January 2014, he believed he could not collect UC benefits while receiving severance pay. Id.

---

[3] At the subsequent referee's hearing, Claimant's union representative, Kathleen Brambrinck (Union Representative), objected to the admission of the Claimant Questionnaire into the record during the hearing on the timeliness of the appeal. Union Representative explained that the union members may have misinterpreted the question to mean did they get severance pay prior to 2012. N.T. at 4. Nevertheless, the referee admitted the Claimant Questionnaire into the record. Id. Near the close of the hearing, Union Representative stated that Claimant and other union members knew long before 2012 that their contract included severance pay. N.T. at 13. This information is relevant to the underlying merits of Claimant's appeal, which the referee and the Board did not reach.

[4] The notice of determination explained that the amount of the deduction would be determined by subtracting 43% of Claimant's three-year annual wage ($19,417) from the total amount of the severance payment ($39,112.50). Certified Record (C.R.) at Item #4 (Notice of Determination).

3

Nevertheless, on September 25, 2015, Claimant filed an appeal of the notice of determination after being made aware that the severance deduction did not apply to him because the severance provision of his contract existed prior to January 2012. N.T. at 8.

The Department afforded Claimant a referee's hearing. As noted above, Claimant testified that he and his coworkers relied on the 2014 information provided by the UC representatives, which indicated that Employer's employees could not draw unemployment while receiving severance. N.T. at 7-10. In particular, Claimant testified that based on the 2014 information provided by the UC representatives, he did not question the June 2015 notice of determination. N.T. at 8. Claimant only appealed after he learned that other employees were collecting both severance and UC benefits. N.T. at 12.

Ultimately, the referee dismissed Claimant's petition as untimely, noting she had no jurisdiction to accept an appeal filed after the expiration of the statutory appeal period, absent limited exceptions not applicable there. Ref. Op., 10/21/15, at 2. The referee found that "[t]he record does not indicate that the claimant was misinformed or misled regarding his right to appeal." Id., Finding of Fact (F.F.) No. 7. The referee also found that "[t]he record does not indicate that the filing of the late appeal was caused by fraud or its equivalent by the administrative authorities, by a breakdown in the appellate system, or by non-negligent conduct." F.F. No. 8 (emphasis added).

4

On appeal, the Board affirmed. In so doing, it adopted the referee's findings and conclusions. Claimant petitions for review.[5]

## II. Discussion

### A. Argument

Claimant contends the Board erred in dismissing his appeal as untimely where UC representatives advised Claimant at a town hall meeting that he could not collect UC benefits while collecting severance pay.

### B. Claimant's Argument

Claimant contends his appeal should be reinstated because an administrative breakdown caused the untimeliness of his appeal. Citing Union Electric Corporation v. Board of Property Assessment, Appeals & Review of Allegheny County, 746 A.2d 581 (Pa. 2000), Claimant contends the UC representatives, as official representatives of the Department, provided Claimant with misleading information about his eligibility for UC benefits. Claimant reasonably relied on this information because the UC representatives were individuals of authority. Consequently, when Claimant received the notice of determination explaining the severance deduction, he had no reason to believe it contained an error necessitating an appeal.

---

[5] Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. Oliver v. Unemployment Comp. Bd. of Review, 5 A.3d 432 (Pa. Cmwlth. 2010) (en banc).

More specifically, Claimant asserts that our Supreme Court in Union Electric addressed the definition of a breakdown in the court's operations. Thereafter, the Court determined that a *nunc pro tunc* appeal may be granted when an "administrative body acts negligently, improperly or in a misleading way." Union Electric, 746 A.2d at 584.

In Union Electric, a county board of assessment issued an order extending the deadline to file tax assessment appeals. However, the board did not have authority to extend the deadline. Nonetheless, an appeal was filed after the board extended the deadline. Given those circumstances, the Supreme Court reasoned that the board's negligent action in extending the deadline constituted a breakdown in the trial court's operations such that the appellants should be allowed to appeal *nunc pro tunc*. See Union Electric, 746 A.2d at 584. In allowing the appeals, the Court noted, despite the lack of actual authority, the board was cloaked with apparent authority because it was the reviewing body, and that the appellants reasonably relied on this appearance of authority.

Claimant also cites Stana v. Unemployment Compensation Board of Review, 791 A.2d 1269 (Pa. Cmwlth. 2012). In Stana, the claimant received an October 2000 notice that she qualified for a maximum of 16 weeks of UC benefits and that she had until November 8, 2000 to appeal the notice. Believing the maximum number of weeks was too low, the claimant contacted a UC representative. As a result of that contact, the claimant felt that the problem was settled and no further action on her part was needed. However, when in January

6

2001 the claimant received another notice stating she had only four weeks of benefits left, she appealed the October 2000 notice of determination.

In dismissing the claimant's appeal, the referee found that the claimant was not misinformed nor in any way misled regarding her right of appeal. Without making any additional findings, the Board affirmed. The claimant petitioned for review. In vacating the Board's order in Stana, we reasoned:

> Under the Law, failure to file an appeal within fifteen days ordinarily mandates dismissal of the appeal unless there is some adequate excuse for the late filing. However, a showing of fraud or breakdown in the administrative process may justify an appeal *nunc pro tunc*. Negligence on the part of an administrative official may be deemed the equivalent of fraud. Furthermore, 'where a person is unintentionally misled by an officer who is authorized to act in the premises, courts will relieve an innocent party of injury consequent on such misleading act, where it is possible to do so.

Stana, 791 A.2d at 1271 (citations omitted).

In Stana, we reasoned that the claimant's testimony, if believed by the fact-finder, may be sufficient to allow an appeal *nunc pro tunc*. However, the referee's findings included no credibility determinations regarding the claimant's excuse for her untimely appeal. In particular, the Court stated, the referee simply found the claimant was not misled as to her *right* to appeal; however, neither the referee nor the Board determined whether the claimant was misled about the *necessity* of filing an appeal under the circumstances of that case. Therefore, we

remanded for credibility determinations relating to the conversation the claimant asserted took place and the reasons for the claimant's late filing of her appeal.[6]

As further support, Claimant cites In re Borough of Riegelsville From the Bucks County Board of Assessment & Revision of Taxes, 979 A.2d 399 (Pa. Cmwlth. 2009), which dealt with the tax exempt status of recently-acquired government real estate. In Riegelsville a tax assessment board issued notices of assessment for three properties, which incorrectly listed individual trustees rather than the borough as owners of three properties. Thereafter, a board official informed the borough's counsel that all assessment records regarding the borough's ownership of the three properties were "o.k." The borough's counsel mistakenly took this to mean that the properties were granted tax exempt status. In the months that followed, the borough learned the board did not grant the properties tax exempt status. Ultimately, the borough sought an appeal *nunc pro tunc* to challenge the assessments. The trial court denied the appeal, noting it was without the authority to extend the time for a party seeking an exemption and that neither exceptional circumstances nor fraud warranted a *nunc pro tunc* appeal.

In reversing, this Court found that the board official's statement that the ownership issue was corrected and that the borough owned the land gave rise to a reasonable presumption that the government-owned property was exempt from

---

[6] The dissent in Stana noted that the claimant spoke with an employee of the job center who told her she *should* have enough credits to receive 26 weeks of benefits. Notably, the dissent recognized, the referee and the Board found Claimant was not misled or misinformed in any way regarding her right to appeal. As such, the dissent reasoned that a credibility determination was implicit in those findings.

taxation. As such, where the board knew of the change in ownership from private to government-owned, it was reasonable for the borough to presume an assessment appeal was unnecessary. To that end, the Court noted that a presumption that government-owned property is tax exempt was consistent with assessment law.

In addition, Claimant cites two unreported Commonwealth Court cases:[7] <u>Berenzak v. Unemployment Compensation Board of Review</u> (Pa. Cmwlth., No. 1366 C.D. 2011, filed July 20, 2012) 2012 WL 8682665 and <u>Walsh v. Unemployment Compensation Board of Review</u> (Pa. Cmwlth., No. 1248 C.D. 2012, filed May 13, 2013) 2013 WL 3982771. In <u>Berenzak</u>, the claimant was initially granted benefits, and the employer appealed. Thereafter, the referee issued a decision finding the claimant ineligible for benefits. Significantly, after a conversation with a UC representative and her employer, the claimant believed she would continue to receive benefits. Further, once she stopped receiving benefits, she called the UC representative, who told her it was a mistake that would be cleared up. Two weeks later, after the appeal period from the referee's denial of benefits expired, the UC representative called the claimant and told her she needed to appeal. Ultimately, the referee dismissed the appeal as untimely, noting the UC authorities did not mislead the claimant concerning her right or the necessity to appeal. The Board affirmed the referee.

---

[7] Unreported cases may be cited as persuasive. <u>See</u> Commonwealth Court Internal Operating Procedure 414, 210 Pa. Code §69.414 (an unreported panel decision of the Commonwealth Court, issued after January 15, 2008, may be cited for its persuasive value).

9

On appeal, we remanded to the Board for findings as to (1) whether a UC representative misled the claimant to believe that a mistake occurred that could be resolved without a hearing; (2) whether the service center's determinations were confusing or whether they misled or misinformed the claimant; and, (3) whether the UC representative instructed the claimant to appeal the referee's decision *before* or *after* the expiration of the appeal period. We noted that without such specific findings, we would be unable to determine whether the claimant was actually misled by the UC authorities as to constitute a breakdown in the administrative process.

In <u>Walsh</u>, the claimant, who obtained a part-time holiday position while receiving benefits, properly reported her temporary earnings, which did not exceed her partial benefit credit, to the UC authorities. However, the UC authorities mistakenly terminated her benefits for a reporting violation and issued a January 2012 (first) notice of determination, which the claimant appealed. Further, when the claimant's part-time seasonal position ended, the UC authorities mistakenly terminated her benefits based on a voluntary quit. To that end, the service center issued a February 2012 (second) notice of determination, finding the claimant ineligible for benefits based on a voluntary quit without necessitous and compelling cause.

Following a hearing in March 2012, a referee (first referee) reversed the first notice of determination and found the claimant eligible for benefits, finding claimant properly reported her earnings and noting that the service center mistakenly attributed her earnings to multiple employers. Thereafter the claimant

received one lump sum payment, but nothing further. The claimant then made several phone calls to the UC authorities, who assured her everything was okay. However, on March 28, 2012, the claimant learned she needed to file an appeal of the second determination.

Two days later, the claimant filed a late appeal. Before a different referee (second referee), the claimant and her husband testified they did not know an additional issue (voluntary quit of seasonal part-time job) remained outstanding, and the service center assured them that everything was in order. Following a hearing on the claimant's late appeal, the second referee dismissed it as untimely and the Board affirmed.

On appeal, we reversed, noting that the service center's errors in mishandling Claimant's claim, which resulted in two erroneous notices of determination, constituted a breakdown in the administrative process which put Claimant in a confusing position where she did not understand the need for the second appeal.

Similar to the claimants in Stana, Riegelsville, Berenzak and Walsh, the claimant asserts he was misinformed or misled by the UC representatives, which resulted in his belief that he had no reason to file an appeal. To that end, the claimant testified he never questioned the UC representatives, who Claimant believed were "pretty great with information that they have." N.T. at 8. Claimant further testified he did not look up severance pay in his UC handbook because the UC representatives told him he could not receive it. N.T. at 13. Claimant also

asserts the UC representatives did not couch their presentation with statements such as if you disagree with us, you can appeal.

In light of the clear and explicit information provided by the UC representatives to Employer's employees at the pre-termination meeting, Claimant argues he reasonably relied on their apparent authority. See Tarlo v. Univ. of Pittsburgh, 443 A.2d 879 (Pa. Cmwlth. 1982) (appellant's counsel reasonably relied on official's misrepresentation that appeal must be filed within 30 days of receipt of the letter (rather than 30 days after entry of the order); mistakes, although unintentional, having an effect equivalent to fraud should not free an agency of its statutory obligation to review its actions). Negligence on the part of an administrative official may be deemed the equivalent of fraud. Stana.

Under these circumstances, Claimant argues, the courts must look beyond whether he was misled as to his right to appeal. Rather, the courts should also evaluate whether he was misled as to the *necessity* of filing an appeal. To that end, Claimant asserts that although the courts have reinstated appeals where the appellant was misled as to his appeal rights, the courts have never held that to be the sole reason for finding an administrative breakdown. See Flynn v. Unemployment Comp. Bd. of Review, 159 A.2d 579 (Pa. Super. 1960) (case remanded to Board for additional findings as to whether a UC interviewer misled the claimant and dissuaded her from taking an appeal; an appeal period may be extended when it is possible to relieve an injured party from the consequences of its reliance on a misrepresentation).

12

## C. Board's Response

The Board contends nearly all of the cases Claimant cites involve misleading information provided *after* an adjudication issued but *before* an appeal period expired. Here, however, the UC representatives provided the misleading information months before the Department issued its notice of determination.

The Board asserts the present case is more similar to Pickering v. Unemployment Compensation Board of Review, 471 A.2d 182 (Pa. Cmwlth. 1984). In Pickering, the Department issued a December 7, 1981 notice of determination deducting the claimant's disability pension from his benefits. The notice informed the claimant that he had 15 days to appeal the determination. The claimant, however, did not appeal until February 1982, and the referee dismissed the appeal as untimely. Before this Court, the claimant argued that in a separate December 1981 decision the Board held that a different claimant's pension was not deductible from his benefits. Thus, the UC authorities should have known of that case and advised him about it so he could timely appeal. The claimant, however, testified that the UC authorities advised him in October 1981, months before the notice of determination, that any appeal would have little chance of success. Ultimately, we reasoned that the UC authorities' misinterpretation and misapplication of the law did not constitute willful or negligent conduct equivalent to fraud, but rather simple legal error which the administrative appeal process was designed to remedy. However, that requires that the claimant file a timely appeal.

In Phares v. Unemployment Compensation Board of Review, 482 A.2d 1187 (Pa. Cmwlth. 1984), the UC authorities advised the claimant, after his

13

discharge from the Air Force, that he was denied benefits because of his eligibility for reenlistment. However, prior to his termination, the claimant's sergeant advised him that he could not reenlist. Nonetheless, the claimant did not timely appeal because he believed the UC authorities' assertion that he could reenlist. When the claimant tried to reenlist, however, he was informed he could not do so for two years. The referee dismissed the claimant's appeal for untimeliness, and the Board affirmed.

Citing <u>Pickering</u>, this Court affirmed, noting the UC authorities' misinterpretation of the law constituted only legal error, not fraud or its equivalent, which would justify extension of the appeal period. Moreover, prior to his termination, the claimant's sergeant informed him that he could not reenlist. This should have put the claimant on notice of the need to clarify whether he should appeal the notice of determination when he received it.

In the present case, the Board argues the UC representatives' misinterpretation of the applicability of the deduction for severance pay similarly constituted legal error, not fraud. As such, a timely appeal could have remedied the situation. Here, Claimant did not testify the UC representatives told him not to file an appeal. However, Claimant did not read the entire notice of determination or look up severance pay in the UC handbook that the UC representatives gave him. N.T. at 7, 12-13.

In addition, the Board cites our recent unreported decision in <u>Cardone v. Unemployment Compensation Board of Review</u> (Pa. Cmwlth., No. 2713 C.D.

2015, filed July 27, 2016) 2016 WL 4069228, which involved the same deduction for severance pay in Section 404(d)(i)(iii) of the Law. The service center's notice of determination advised the claimant that his weekly benefit rate was $0 due to the deductible severance pay. The notice included an appeal deadline of July 24, 2015. However, the claimant did not file his appeal until September 2015. At a hearing on the timeliness of the appeal, the claimant testified he twice contacted the UC authorities after receiving the notice, and both times they told him he must run his severance out before he can receive benefits. The claimant also stated that the UC authorities did not discuss his right to appeal the notice of determination.

Ultimately, the referee dismissed the appeal as untimely, concluding that the claimant was not misled about his appeal rights or prevented from appealing as a result of fraud or an administrative breakdown. The Board affirmed.

Before this Court, the claimant argued he was entitled to an appeal *nunc pro tunc* because his untimely appeal resulted from his reliance on the UC authorities' statements about his ineligibility for UC benefits, which he characterized as an administrative breakdown. This Court, however, observed that an administrative breakdown occurs where an administrative board or body is negligent, acts improperly or intentionally misleads a party. In rejecting the claimant's argument, we reasoned:

> Here, [the claimant] acknowledged that the Notice included instructions for filing a timely appeal. Although [the claimant] testified that he relied on the Department employees' statements over the telephone that [he] could not receive UC benefits due to his deductible severance

15

> pay, the employees' alleged statements merely reiterated the basis for the Department's determination. Because the record is void of any evidence that the Department employees misled or misinformed [the claimant] about [his] right to appeal, [the claimant's] reliance on the employees' statements does not constitute an administrative breakdown.

Cardone, Slip Op., at 4.

Notably, the Board continues, if an incorrect statement about eligibility for benefits made after the notice of determination issued is not an administrative breakdown, a similar incorrect statement made months before the determination issued cannot be considered an administrative breakdown. Pickering (misinformed interpretation of the law offered months prior to determination does not constitute a fraudulent deprivation of the claimant's appeal rights).

In sum, the Board contends the misrepresentations by the UC representatives simply constituted legal error which the administrative appeal process was designed to remedy. However, to correct such errors, a claimant must file a timely appeal. Because Claimant failed to timely appeal, the Board asserts it did not err or abuse its discretion in affirming the referee's dismissal of Claimant's appeal under Section 501(e) of the Law.

### D. Analysis

Prior to January 1, 2012, severance payments received by an employee based on separation from employment were not deductible from the

16

employee's UC benefits. Killian-McCombie v. Unemployment Comp. Bd. of Review, 62 A.3d 498 (Pa. Cmwlth. 2013).

However, on January 1, 2012, Section 404(d)(1)(iii) of the Law became operative. That provision requires the deduction of severance payments from UC benefits. Nonetheless, the severance pay amendments do not apply to severance pay agreements entered into prior to January 1, 2012. See Killian-McCombie, 62 A.3d at 500 n.3. In the present case, Claimant ultimately testified he had a severance agreement in place with Employer prior to January 2012. See N.T. at 13.

But, the UC representatives at a January 2014 meeting arranged by Employer incorrectly advised Claimant that he could not collect UC benefits while receiving severance pay. Despite this information, Claimant applied for UC benefits in December 2014. Also, despite this information Claimant re-opened his claim in May 2015 while receiving severance payments.

During his application, Claimant failed to inform the compensation authorities that his severance agreement pre-dated January 2012. As a result, he received a June 2015 notice of determination indicating, after deduction of severance pay, eligibility for benefits of $0. Because Claimant believed what the UC representatives told him in January 2014, he did not appeal the June 2015 notice of determination. The Board points out the UC representatives never advised Claimant not to appeal.

17

While we agree with Claimant that conduct which misleads a party regarding the necessity to appeal could be the basis for *nunc pro tunc* relief, we respectfully disagree that this case involves misinformation regarding the necessity for an appeal. Necessity-of-appeal type cases involve statements or actions suggesting that an appeal is not allowed, an appeal could wait, or further corrective action is unnecessary. See, e.g, Flynn (claimant allegedly told by claim representative that she could not take appeal, that she didn't have a leg to stand on; remanded for credibility determinations); Walsh (two erroneous notices of determination; claimant thought all issues resolved at hearing on first notice of determination; during several subsequent phone conversations with compensation authorities, claimant told "everything was fine" or "time needed to pass"); Bereznak (claimant allegedly told by claim representative benefits should be fine, that a hearing would not be necessary); Riegelsville (board official told borough's counsel that all records were "o.k."); Stana (after meeting with claim representative, claimant believed matter corrected and no further action necessary; remanded for credibility determinations); W. Greene Sch. Dist. v. Unemployment Comp. Bd. of Review, 535 A.2d 697 (Pa. Cmwlth. 1988) (claimant allegedly told by claim representative that appeal could wait); Berry v. Unemployment Comp. Bd. of Review, 382 A.2d 487 (Pa. Cmwlth 1978) (claimant allegedly told by claim representatives he could not appeal).

In this case, there are simply no statements attributable to compensation authorities that address the availability, timing or need for an appeal. We conclude that not every misstatement by an apparently authoritative person will justify a *nunc pro tunc* appeal; rather, the misinformation must relate to the

availability, timing or need for an appeal. Therefore, we conclude that the cases relied upon by Claimant are not controlling here.

The Supreme Court's decision in <u>Union Electric</u> is consistent with this conclusion. <u>Union Electric</u> involved the timing of an appeal. The assessment board improperly extended the time for the landowners to appeal. Because the board had apparent authority to do so, the Supreme Court allowed the late appeal. Insofar as <u>Union Electric</u> involved a misunderstanding relating to the availability, timing or need for an appeal, its holding does not support relief under the facts here.

As to the timing of the misleading statements in this case, we note that almost all the cases where a *nunc pro tunc* appeal was allowed involve statements attributed to compensation authorities *after* the issuance of a notice of determination and *during* the period when an appeal is allowed. However, we do not believe that only misleading statements during the appeal period can be considered for *nunc pro tunc* purposes. Nevertheless, a fact-finder may take into consideration both the remoteness of the statements and the relevance of intervening events in determining whether misleading statements *caused* a delay in filing an appeal.

Here, the misleading statements occurred about 18 months before the appeal period began to run. In the interim, the Claimant filed an initial claim and then re-opened his claim. Also, the Claimant received the UC Handbook, which contained accurate written information regarding deductibility of severance pay.

19

Ref. Op., 10/21/15 at 2 ("[T]he Referee finds that the claimant was sent the UC Handbook, which gives information on severance pay, and was aware that he could file an appeal to the determination of the Service Center if he disagreed with it."). Further, the Claimant received accurate written information about his appeal rights. Id. Given the fact-finder's focus on relevant, intervening events, we discern neither an error of law nor an abuse of discretion in the Board's adopted finding that "[t]he record does not indicate that the filing of the late appeal was caused by fraud or its equivalent by the administrative authorities, by a breakdown in the appellate system, or by non-negligent conduct." Ref. Op., F.F. No. 8 (emphasis added).

Moreover, after reviewing the cases cited by both parties, we conclude the circumstances in the present case are most similar to those in our 2016 unreported decision in Cardone. We therefore adopt the reasoning of Cardone as persuasive. This recent decision supports our holding that misinformation supporting a *nunc pro tunc* appeal must relate to the availability, timing or need for an appeal.

In both Cardone and the present case, the claimants failed to file timely appeals from notices of determination indicating that the claimants' weekly benefit rate was $0 due to deduction of their severance pay. Also, in both cases, the claimants were told by UC representatives or employees that they must run their severance out before they could receive UC benefits. Further, in neither case were the claimants misled or misinformed regarding their rights to appeal the notices of determination.

20

Similar to <u>Cardone</u> and the other cases cited by the Board, nothing in the record indicates the UC representatives attempted to dissuade or discourage Claimant from appealing the notice of determination. We acknowledge misinformation regarding the deductibility of Claimant's severance pay from UC benefits. However, as discussed in <u>Pickering</u>, the UC representatives' misinterpretation of the Law does not constitute conduct equivalent to a fraudulent deprivation of Claimant's appeal rights. Rather, it constitutes "<u>legal error, not fraud, and it is just such errors which the administrative process was designed to remedy</u>." <u>See</u> <u>Pickering</u>, 471 A.2d at 184 (emphasis added); <u>see</u> <u>also</u> <u>Ridgeway v. Unemployment Comp. Bd. of Review</u>, (Pa. Cmwlth., No. 1977 C.D. 2009, filed March 29, 2010), 2010 WL 9514426 (unreported).

Nonetheless, Claimant contends <u>Cardone</u> is distinguishable for several reasons. First, according to Claimant, "the timing of misleading or incorrect information has no legal bearing on whether an administrative breakdown occurred as long as the information was received prior to the appeal deadline." Reply Br. of Pet'r at 2-3. Second, Claimant asserts, the misinformation given to the claimant from a claims representative in <u>Cardone</u> "is not comparable" to the misinformation given to Claimant here, because it came during a Department-sanctioned information session. <u>Id</u>. at 3. Third, the <u>Cardone</u> court did not reference the earlier decision in <u>Stana</u>, suggesting a lack of awareness that misinformation about the *necessity* of an appeal can support *nunc pro tunc* relief. <u>Id</u>.

We reject these attempts to distinguish our recent decision in <u>Cardone</u>. As stated above, a fact-finder may take into consideration the remoteness of

21

allegedly misleading statements, together with the significance of intervening events, in considering whether the statements caused a late appeal. Also, we dismiss Claimant's suggestion that misinformation in different cases should be compared and evaluated. In the absence of some reasonable, objective standard for comparison, such an approach is unworkable, and it risks unpredictable and arbitrary results. Stated differently, we are unable to distinguish between misinformation during telephone calls with a Department representative (Cardone) and misinformation from a UC representative at a Department-sanctioned meeting (this case). Finally, as discussed above, this case is not about misinformation regarding the availability, timing or need for an appeal; therefore, the failure of the Cardone court to cite Stana is of no moment.

Further, Claimant attempts to distinguish Pickering, a case which preceded Union Electric. In Union Electric, Claimant asserts, the Supreme Court expanded the concept of administrative breakdown to include not just fraudulent conduct but also negligent, improper and misleading acts by an agency. In Pickering, however, this Court reiterated a higher "fraud or its equivalent" standard.

We decline to embrace Claimant's attempt to distinguish Pickering because it relied on an outdated, higher standard. The Pickering court set forth a standard for *nunc pro tunc* relief consistent with the Supreme Court's later decision in Union Electric. Thus, the Pickering court recognized that *nunc pro tunc* relief is available "only where it can be shown that the compensation authorities have

engaged in fraudulent conduct or its equivalent, i.e. <u>wrongful or negligent conduct</u>." <u>Pickering</u>, 471 A.2d at 183-84 (citations omitted, emphasis added).

In short, the January 2014 statements by the UC representatives here may have misinformed Claimant as to the deductibility of his severance payments. But, the misinformation did not dissuade him from applying for UC benefits. After receiving the misinformation, Claimant was given accurate, written information about deductibility of severance payments in the UC Handbook, and he was given accurate, written information about his appeal rights in the notice of determination. Claimant was not misled as to the availability, timing or need for an appeal. However, Claimant did not timely appeal. Therefore, the Board did not err in denying Claimant's untimely appeal. Accordingly, we affirm.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Greene,                    :
                Petitioner    :
                                   :
               v.                :    No. 2750 C.D. 2015
                                   :    Argued: December 12, 2016
Unemployment Compensation Board    :
of Review,                         :
                Respondent    :

# **O R D E R**

**AND NOW**, this 10th day of March, 2017, for the reasons stated in the foregoing opinion, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.

 

                                   _____
                                   ROBERT SIMPSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Greene,                           :
                    Petitioner            :
                                          :
          v.                              :
                                          :
Unemployment Compensation                 :
Board of Review,                          :    No. 2750 C.D. 2015
                    Respondent            :    Argued:  December 12, 2016


BEFORE:    HONORABLE ROBERT E. SIMPSON, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


DISSENTING OPINION
BY JUDGE COSGROVE                          FILED:  March 10, 2017


          While I recognize the thoughtful analysis offered by the Majority, I must dissent.  The question of whether permission to appeal *nunc pro tunc* should be granted is one which lies in equity.  *See Bass v. Bureau of Corrections,* 401 A.2d 1133 (Pa. 1979); *see also, Schofield v. Department of Transportation, Bureau of Driver Licensing,* 828 A.2d 510, 512 (Pa. Cmwlth. 2003).  At its core, this is a simple matter of fairness.  There is no question in this case that misleading information by a governmental entity was provided to Claimant Kenneth Greene.  This information, at the very least, influenced (if not outright controlled) Claimant's decision making process, and created an impediment to the timely filing of the appeal.  Submitting the equitable question to the standard employed by the

Majority places such a noose around it as to choke it of all sense of fairness. As I would reverse the decision below, I am compelled, respectfully, to dissent.

_____
JOSEPH M. COSGROVE, Judge