# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Renee Huggins, : 
            Petitioner : 
             : 
       v. : No. 341 C.D. 2016
             : Argued: December 12, 2016
Unemployment Compensation Board : 
of Review : 
            Respondent : 

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
             HONORABLE JOSEPH M. COSGROVE, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**         **FILED: May 17, 2017**

      This late appeal case, argued with <u>Kenneth Greene v. Unemployment Compensation Board of Review</u>, ___ A.3d ___, (Pa. Cmwlth., No. 2750 C.D. 2015, filed March 10, 2017), similarly questions whether conduct constituting an administrative breakdown must involve the right to or necessity for filing an appeal, or whether the "breakdown" conduct may apply more broadly to other types of misinformation.

      In particular, Renee Huggins (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) that adopted a referee's decision dismissing Claimant's appeal as untimely under Section 501(e)

of the Unemployment Compensation Law (Law).[1] Claimant asserts she is entitled to an appeal *nunc pro tunc* because she based her decision not to appeal on misleading and incomplete information provided by unemployment compensation service center representatives (UC representatives), from the Department of Labor and Industry (Department), who advised her she could not collect UC benefits while collecting severance pay.[2]

## I. Background

Claimant testified she worked for Mondelez Global (Employer) as a rotary operator before being laid off in May 2015 when Employer closed down. Referee's Hr'g, Notes of Testimony (N.T.), 11/23/15, at 9-10. Prior to Claimant's layoff, Employer arranged a meeting for UC representatives to speak to employees about issues related to their layoffs. N.T. at 12. At the meeting, the UC representatives stated that severance pay was deductible and advised Claimant that after she received $19,400 in severance she could begin collecting UC benefits. Id.

Upon her separation, Claimant applied for UC benefits. Notably, when asked in Question No. 11 of the Claimant Questionnaire whether her union's agreement with Employer providing for a severance payment existed prior to

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §821(e).

[2] Prior to January 1, 2012, severance payments received by an employee based on separation from employment were not deductible from the employee's UC benefits. Killian-McCombie v. Unemployment Comp. Bd. of Review, 62 A.3d 498 (Pa. Cmwlth. 2013). Here, UC representatives failed to advise Claimant at a pre-separation meeting that the new severance deduction applied only to severance agreements made *after* January 1, 2012. Claimant's severance agreement preceded that date.

January 1, 2012, Claimant answered "no." See Certified Record (C.R.) at Item #3 (Claimant Questionnaire at #11).

On June 22, 2015, a UC service center sent Claimant a notice of determination advising her that her severance pay was deductible under Section 404(d)(1) of the Law, 43 P.S. §804(d)(1).[3] This resulted in a revised weekly benefit rate of $0 for the claim weeks ending 5/23/15 through 8/01/15, and $178 for claim week ending 8/08/15. In short, Claimant was not eligible for her full weekly benefit amount until the week ending August 15, 2015. C.R. at Item #4.

The notice of determination indicated a right to appeal the determination on or before July 7, 2015. C.R. at Item #4. Although Claimant testified she never received her notice of determination, other employees did receive their determinations. N.T. at 6-7. In fact, Claimant testified at the November 2015 hearing that she believed the notice of determination was still in the mail. N.T. at 7. Claimant further stated that none of the people she knew who received the adverse determinations appealed. Id. Similarly, Claimant testified she would not have appealed even if she received the determination based on information provided by the UC representative indicating she could not collect severance and UC benefits at the same time. N.T. at 14. In particular, Claimant stated "I didn't appeal in a timely fashion because I did not know that I was being done wrong." N.T. at 18 (emphasis added).

---

[3] The notice of determination explained that the amount of the deduction would be determined by subtracting 43% of Claimant's three-year annual wage ($19,417) from the total amount of the severance payment ($31,295.77). Certified Record (C.R.) at Item #4 (Notice of Determination).

Ultimately, Claimant appealed the notice of determination on November 3, 2015. Before a referee, Claimant testified at length regarding her confusion concerning the severance deduction and her eligibility. She also submitted into evidence referee decisions involving her coworkers. See Referee's Hr'g; Claimant's Ex. C-3 (C.R. at Item #9).[4]

Ultimately, the referee in the present case rejected Claimant's testimony that she did not receive the notice of determination and dismissed her appeal as untimely, noting she had no jurisdiction to accept an appeal filed after the expiration of the statutory appeal period. Ref. Op., 11/23/15, at 2. The referee also found Claimant was not misled or misinformed as to her appeal rights. Finding of Fact No. 5.

On appeal, the Board affirmed. In so doing, it adopted the referee's findings and conclusions. As to the information provided by the UC representatives at the pre-separation meeting, the Board stated:

> A Department representative telling [Claimant] that she
> may not file claims for benefits until her severance pay

---

[4] In a case involving Cynthia Jastrzembski, a claimant-employee who filed an untimely appeal, a referee granted an appeal *nunc pro tunc*. However, in Jastrzembski, the referee determined the claimant filed an appeal "shortly after she was informed by a CareerLink representative that the Determination was incorrect and she had a right to file a late appeal." See Claimant's Ex. C-3; Referee's Decision/Order (Jastrzembski v. Mondelez Global, LLC), Appeal No. 15-09-C-D472, filed 10/23/2015, at 2 (emphasis added). See Union Elec. Corp. v. Bd. of Prop. Assessment, Appeals & Review of Allegheny Cnty., 746 A.2d 581 (Pa. 2000) (*nunc pro tunc* appeal allowed where assessment board negligently extended period for landowner's appeal). Those are not the facts in this case.

has been fully allocated <u>is no different from a determination saying the same thing</u>, and the record contains no evidence the claimant was told to not appeal the determination.

Board Op., 12/29/15 (emphasis added).  Claimant petitions for review.[5]

## II. Discussion

The parties' arguments here are exactly the same as those made in <u>Greene</u>.  Further, on appeal Claimant does *not* contest the referee's determination, affirmed by the Board, that Claimant's testimony does not overcome the presumption that she received the notice of determination.

In <u>Greene</u> we held that conduct which misleads a party regarding the necessity to appeal could be the basis for *nunc pro tunc* relief.  After analyzing the cases cited by the parties, we observed that necessity-of-appeal type cases involve statements or actions suggesting that an appeal is not allowed, an appeal could wait, or further corrective action is unnecessary.

In addition, in <u>Greene</u> we held that there were no statements attributable to compensation authorities that address the availability, timing or need for an appeal.  We concluded that not every misstatement by an apparently authoritative person will justify a *nunc pro tunc* appeal; rather, the misinformation must relate to the availability, timing or need for an appeal.  Therefore, we

---

[5] Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated.  <u>Oliver v. Unemployment Comp. Bd. of Review</u>, 5 A.3d 432 (Pa. Cmwlth. 2010) (<u>en banc</u>).

concluded that the cases relied upon by the claimant were not controlling. Further, we rejected the claimant's attempts to distinguish the cases upon which the Board relied.

Because in this case there are no statements attributable to compensation authorities that are misleading as to the availability, timing, or need for an appeal, we reach the same conclusions here.

The Supreme Court's decision in Union Electric Corp. v. Board of Property Assessment, Appeals and Review of Allegheny County, 746 A.2d 581 (Pa. 2000), relied upon by Claimant, is consistent with this conclusion. Union Electric involved the timing of an appeal. The assessment board improperly extended the time for the landowners to appeal. Because the board had apparent authority to do so, the Supreme Court allowed the late appeal. Insofar as Union Electric involved a misunderstanding relating to the availability, timing or need for an appeal, its holding does not support relief under the facts here.

Moreover, as discussed in Pickering v. Unemployment Compensation Board of Review, 471 A.2d 182 (Pa. Cmwlth. 1984), the UC representatives' misinterpretation of the Law does not constitute willful or negligent conduct equivalent to a fraudulent deprivation of Claimant's appeal rights. Rather, it constitutes "legal error, not fraud, and it is just such errors which the administrative process was designed to remedy." Id. at 184.

6

Thus, although the UC representatives misinformed Claimant as to her eligibility to receive UC benefits while receiving severance pay under a pre-2012 severance agreement, their actions constituted legal error, not an administrative breakdown. The administrative appeal process is designed to remedy such errors.

In short, the UC representatives did not dissuade Claimant from appealing a determination that her severance pay was deductible from her UC benefits. Further, the Department's notice of determination advised her that if she disagrees with the determination, she may file an appeal by July 7, 2015. See C.R. at Item #5 (Notice of Determination). Therefore, the Department did not mislead Claimant either as to her right to appeal or the necessity for an appeal. However, Claimant did not appeal until November 3, 2015, after learning some of her coworkers were receiving both severance pay and UC benefits. Consistent with our recent reported decision in Greene, we affirm.

_____
ROBERT SIMPSON, Judge

7

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Renee Huggins,                                    :
                          Petitioner              :
                                                  :
              v.                                  :   No. 341 C.D. 2016
                                                  :
Unemployment Compensation Board                   :
of Review                                         :
                          Respondent              :


## O R D E R

**AND NOW**, this 17th day of May, 2017, for the reasons stated in the foregoing opinion, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.


_____
ROBERT SIMPSON, Judge

Renee Huggins,                          :
                    Petitioner          :
                                        :
          v.                            :
                                        :
Unemployment Compensation               :
Board of Review,                        :    No. 341 C.D. 2016
                    Respondent          :    Argued:  December 12, 2016


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge
          HONORABLE BONNIE LEADBETTER, Senior Judge


OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COSGROVE                        FILED:  May 17, 2017


          As I did in *Greene v. Unemployment Compensation Board of Review*, __A.3d__, (Pa. Cmwlth., No. 2750 C.D. 2015, filed March 10, 2017), 2017 WL 943242, I must dissent in this case as well.  As in *Greene*, the present claimant has done nothing wrong other than to rely on governmental representatives to provide true, correct and accurate advice.  When that advice was understood to be incorrect, she sought relief.  Instead of correcting the original error, the majority doubles down on *Greene's* unfortunate analysis and in the process only compounds a harmful result.

*Greene* represents a drastic constriction of *nunc pro tunc* jurisprudence, and is so far from the equitable principles at the root of that jurisprudence, *see Bass v. Commonwealth*, 401 A.2d 1133 (Pa. 1979); *see also Schofield v. Department of Transportation, Bureau of Driver Licensing,* 828 A.2d, 510, 512 (Pa. Cmwlth. 2003) as to render it almost meaningless. *Nunc pro tunc* relief in this court may become as rare as unicorn sightings, but that does not mean justice will be done. As this case represents, quite the opposite is true.

I dissent.

_____
JOSEPH M. COSGROVE, Judge