IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Marcos Garcia, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 954 C.D. 2020 |
| | : | SUBMITTED: April 23, 2021 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                           FILED: June 11, 2021

Marcos Garcia (Claimant) petitions for review, *pro se*, of the August 27, 2020 Order of the Unemployment Compensation Board of Review (Board) affirming the decision of a Referee to dismiss Claimant's appeal as untimely under Section 501(e) of the Unemployment Compensation Law (Law).[1]  We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 821(e).  Section 501(e) of the Law provides:

> *Unless the claimant or last employer or base-year employer of the claimant files an appeal with the [B]oard, from the determination contained in any notice required to be furnished by the [D]epartment . . . within [15] calendar days after such notice was delivered to him personally, or was mailed to his last known post office address*, and applies for a hearing, such determination of the [D]epartment, with respect to the particular facts set forth in such notice, shall be final and compensation shall be paid or denied in accordance therewith.

43 P.S. § 821(e) (emphasis added).

## Background

Following his separation from employment with R.H. Sheppard Inc., Claimant filed an application for unemployment compensation (UC) benefits on December 5, 2019. Bd.'s Finding of Fact (F.F.) No. 1; Record (R.) Item No. 1.[2] Claimant was required to register for employment search services by January 4, 2020. Bd.'s F.F. No. 2.

On December 26, 2019, the Department of Labor and Industry (Department) notified Claimant by letter that he had not yet registered for employment search services and that failure to register by January 4, 2020 would result in his disqualification for UC benefits beginning with the week ending January 11, 2020, and for subsequent weeks until he registered. *Id.* No. 3; R. Item No. 2. The December 26, 2019 letter stated in pertinent part:

> **If you do not complete your registration [for employment search services] by 01/04/2020 you will be disqualified [from] receiv[ing] [UC] benefits beginning with the week ending 01/11/2020.**
>
> . . . .
>
> **. . . [T]he [D]epartment recommends that you register even if you are currently exempt. If your exemption ends and you become unemployed in the future, you will be ineligible until you register.**
>
> **The [D]epartment also encourages you to register even if you are not filing claims for benefits at this time. If you reopen your UC claim in the future, you will be ineligible for benefits unless you have an exemption at that time.**

R. Item No. 2 (bold in original). Claimant did not register for employment search services by January 4, 2020. Bd.'s F.F. No. 4.

_____

[2] The record does not indicate the nature of Claimant's position with R.H. Sheppard Inc. or the reason for his initial separation from employment.

On January 13, 2020, the Department issued a Notice of Determination (Notice) to Claimant, denying his claim for UC benefits. *Id.* No. 5; R. Item No. 3. The Department determined that Claimant was disqualified from receiving UC benefits beginning with the week ending January 11, 2020, and continuing until he registers for employment search services as required by Section 401(b)(1)(i) of the Law, 43 P.S. § 801(b)(1)(i), and the Department's regulation at 34 Pa. Code § 65.11(c).[3] Bd.'s F.F. No. 5. The Notice stated: "This disqualification will continue to apply until you register [for employment search services]." R. Item No. 3. The

---

[3] Section 401(b)(1)(i) of the Law states in relevant part:

Compensation shall be payable to any employe who is or becomes unemployed, and who—

. . . .

(b)(1) Is making an active search for suitable employment. The requirements for "active search" shall be established by the [D]epartment and *shall include, at a minimum*, all of the following:

(i) *Registration by a claimant for employment search services offered by the Pennsylvania CareerLink system or its successor agency within thirty (30) days after initial application for benefits.*

43 P.S. § 801(b)(1)(i) (emphasis added). The regulation at 34 Pa. Code § 65.11(c) (emphasis added) provides:

A claimant shall register for employment search services in the Pennsylvania CareerLink® system within 30 days after the claimant files his application for benefits. See [S]ection 401(b)(1)(i) of the [L]aw. *If a claimant does not register for employment search services in the Pennsylvania CareerLink® system within 30 days after the claimant files his application for benefits, the claimant will be ineligible for compensation for any week that ends more than 30 days after the claimant files his application for benefits unless the claimant registers by Sunday of that week.*

3

Notice also informed Claimant that he had until January 28, 2020 to file a timely appeal to the Referee. *Id.*; Bd.'s F.F. No. 6.

Although Claimant received the Notice, he did not file an appeal by January 28, 2020 because he misread the Notice and did not realize the ongoing nature of his disqualification. Bd.'s F.F. Nos. 6, 7. Claimant appealed to the Referee on April 29, 2020. *Id.* No. 8. At the time he filed his appeal, Claimant still had not registered for employment search services. *See* R. Item Nos. 5, 6; Bd.'s Order, 8/27/20, at 2.[4]

The Referee held a telephone hearing on May 29, 2020. Claimant appeared *pro se* and testified on his own behalf. Claimant's separating employer, R.H. Sheppard Inc., did not participate in the hearing. Claimant's sister-in-law, Deborah Rodriguez, was also present at the hearing but did not offer any testimony. *See* N.T., 5/29/20, at 1, 4.

At the outset of the hearing, the Referee summarized the matters before him as follows:

> The issue involved in today's hearing in each of [Claimant's a]ppeals is Section 501(e) [of the Law], whether . . . Claimant[] filed . . . timely and valid appeal[s] from the [Department's Notices of Determination]. Also, [at issue] in Appeal [Number] 2626 is Section 401(d) [of the Law], whether . . . Claimant is able and available for suitable work, and [at issue] in Appeal [Number] 2627 is Section 401(b)[(1)(i) of the Law], whether . . . Claimant registered for the Pennsylvania JobGateway in accordance with the [Department's] regulations.

---

[4] The record shows that Claimant returned to work for R.H. Sheppard Inc. shortly after his initial layoff. *See* R. Item No. 1; Notes of Testimony (N.T.), 5/29/20, at 7. However, Claimant was subsequently laid off again in March 2020 due to the COVID-19 pandemic. N.T., 5/29/20, at 9; Pet. for Rev. at 1. Following that layoff, Claimant re-submitted his claim for UC benefits in April 2020. R. Item No. 1.

N.T., 5/29/20, at 5.[5]

> With regard to Appeal Number 2627, Claimant testified as follows:
>
> [Referee:] . . . [W]hen you filed that application [for UC benefits] were you living at [the] 411 Ridge Avenue, Mc[S]herrystown, PA 17344 address?
>
> [Claimant:] Yeah, I did, but at the same time I was – I had moved, and my mailing address was the wrong address. . . . *But when I g[o]t those papers back, it was too late to appeal. And I didn't care about if I follow[ed] whatever [the Notice said] because I was only off [for] two days. . . . I went back to work.*

*Id.* at 7 (emphasis added); *see also* R. Item No. 4. (in his appeal to the Referee, Claimant averred, "I went back to work right away so I didn't care about lo[]sing 2 days back in November [2019]").

When asked if he had ever changed his mailing address with the Department, Claimant replied, "I did change my mailing address, but they've been so confused because they had the address, my sister's, when she moved out, she moved everybody out of this house in McSherrystown." N.T., 5/29/20, at 7. He further testified that "*all the mail[] was going to her house, and then she didn't give me the mail[].*" *Id.* (emphasis added).

Claimant testified that he "wasn't expecting to be [laid] off" in March 2020 "because of the coronavirus" and that he filed his appeal on April 29, 2020 "[b]ecause [his] work stopped." *Id.* at 8. When the Referee asked Claimant if he was aware that he was required to register for employment search services, Claimant responded:

---

[5] The record before this Court does not include any agency documentation or orders relating to Appeal Number 2626. The only matter before this Court is Appeal Number 2627, relating to Claimant's ineligibility for UC benefits under Section 401(b)(1)(i) of the Law.

No. I tried to contact [the Department] because I [didn't] want to send my information to the wrong website, and I tried so hard to contact [the Department] to make sure my information [didn't] go to the wrong place. And there were no answers . . . . *It's only two days. I was just like, okay, skip two days. . . .*

*Id.* (emphasis added).[6] Claimant further testified, "I didn't expect the coronavirus [to] affect me at that point. And I know for sure when [my employer] laid me off again on March 25[, 2020], . . . they request[ed] me to . . . register for the . . . CareerLink [website]." *Id.* at 9.

Following the hearing, the Referee dismissed Claimant's appeal as untimely under Section 501(e) of the Law. The Referee found, based on the evidence of record and Claimant's testimony at the hearing, that the Notice was properly mailed to Claimant's last known post office address and was not returned by the postal authorities as undeliverable. Ref.'s F.F. Nos. 2, 3. The Referee also found that Claimant was neither misinformed nor misled regarding his right to appeal or his need to file a timely appeal. *Id.* No. 7. Because Claimant filed his appeal four months after the appeal deadline without justification, the Referee concluded that he lacked jurisdiction to consider the merits of the appeal. Ref.'s Order, 6/1/20, at 2.

Claimant appealed to the Board, which affirmed the Referee's decision. After making its own findings of fact based on the record evidence, the Board concluded as follows:

> Here, the final day to file an appeal from the Department's [Notice] was January 28, 2020. However, [C]laimant failed to file an appeal until April 29, 2020.

---

[6] Claimant testified that he was registered for employment search services at the time of the Referee's hearing. N.T., 5/29/20, at 8. However, the Board found that he was still not registered as of the date of its decision. Bd.'s Order, 8/27/20, at 2.

Section 501(e) of the Law strips the Board and its referees of jurisdiction to accept an appeal filed after the statutory appeal period expires unless caused by fraud or its equivalent by the administrative authorities, a breakdown in the administrative process, or non-negligent conduct.

*[C]laimant did not appeal by January 28, 2020, because he misread the [Notice] and did not realize the ongoing nature of the disqualification. [C]laimant's misunderstanding was the result of his negligence, not administrative breakdown, so his late appeal is unjustified.* Therefore, the Board lacks jurisdiction to consider whether the Department erred by denying [UC] benefits beginning with the week ending January 11, 2020.

However, a denial of [UC] benefits under Section 401(b)(1)(i) of the Law and [34 Pa. Code § 65.11(c)] is not permanent. [A claimant's f]ailure to register for employment search services will result in ineligibility for benefits for each week that ends more than [30] days after the claimant applied for benefits, unless the claimant registers by the Sunday of that week.

**[C]laimant appears to have not yet registered for employment search service[s], so his ineligibility continues and the Board encourages him to register even if he is currently working or exempt from registration so he may promptly receive benefits when next unemployed.**

Bd.'s Order, 8/27/20, at 2 (first emphasis added; second emphasis in original). Claimant now petitions for review of that decision.[7]

## Analysis

On appeal, Claimant argues that he is entitled to UC benefits for the two-week period that he was laid off in 2020 due to the COVID-19 pandemic. Pet. for Rev. at

---

[7] Where, as here, the party with the burden of proof was the only party to present evidence and did not prevail below, our scope of review is limited to determining whether the Board capriciously disregarded competent evidence and whether there was a constitutional violation or an error of law. *Constantini v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 838, 842 n.4 (Pa. Cmwlth. 2017).

1; Claimant's Br. at 9; *see also* R. Item No. 12 ("I am claim[ing] my [UC] benefit[s] because I [did] not work [two] week[s] and three days for the C[OVID-]19."). Claimant asserts that the Board erred in finding that he "did not have the right [to] ask[] for the two weeks of pay since [he] did not do it in a timely manner." Claimant's Br. at 8. Claimant contends that he filed his appeal late because he "was relying on what [the] Human Resources team at work [was] telling [him] to just keep calling [the Department] until [he] got a hold of someone" and "[w]hen [he] finally got a hold of someone[,] they told [him] it was late and [he] had to appeal." *Id.* at 9.[8]

Section 501(e) of the Law requires a claimant to file an appeal from a Department determination within 15 days of the date of mailing to the claimant's last known postal address. 43 P.S. § 821(e). Our Court has held that the "15-day time limit is mandatory and subject to strict application." *Vereb v. Unemployment Comp. Bd. of Rev.*, 676 A.2d 1290, 1292 (Pa. Cmwlth. 1996) (*en banc*). If the claimant does not file an appeal within 15 days, "the determination becomes final, and the [Department] does not have the requisite jurisdiction to consider the matter." *Id.*

Moreover, a claimant has "a heavy burden to justify" the filing of an untimely appeal. *Constantini*, 173 A.3d at 844. "Generally, an appeal *nunc pro tunc* may be allowed when a delay in filing the appeal is caused by extraordinary circumstances involving 'fraud or some breakdown in the court's operation through a default of its officers.'" *Cook v. Unemployment Comp. Bd. of Rev.*, 671 A.2d 1130, 1131 (Pa. 1996) (citation omitted). To satisfy his burden of proof, the claimant must establish that the Department "engaged in fraudulent behavior or manifestly wrongful or

---

[8] This assertion contradicts Claimant's testimony at the hearing that when he tried calling the Department after receiving the Notice, "there were no answers." N.T., 5/29/20, at 8.

negligent conduct" or that "non-negligent conduct beyond [the claimant's] control caused the delay." *Hessou v. Unemployment Comp. Bd. of Rev.*, 942 A.2d 194, 198 (Pa. Cmwlth. 2008). An administrative breakdown by the Department will justify a late appeal only if the breakdown "relate[s] to the availability, timing[,] or need for an appeal." *Greene v. Unemployment Comp. Bd. of Rev.*, 157 A.3d 983, 993 (Pa. Cmwlth. 2017).

In essence, Claimant contends that his appeal was late due to an administrative breakdown or non-negligent conduct beyond his control. Claimant maintains that after he received the Notice, he tried calling the Department multiple times but no one answered the phone and when he finally reached the Department, it was too late to appeal. Claimant's Br. at 7, 9. Claimant admitted, however, that he intentionally took no further action with regard to the Notice because he had already returned to work. Specifically, Claimant testified that he "didn't care about if [he] follow[ed] whatever [the Notice said] because [he] was only off [for] two days" before he "went back to work." N.T., 5/29/20, at 7; *see also* R. Item No. 4 ("I went back to work right away so I didn't care about lo[]sing 2 days back in November [2019]."). We conclude, based on the evidence of record, that Claimant's subsequent return to work did not justify his late appeal.

We rejected this same claim in *Boesch v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 612 C.D. 2016, filed November 3, 2016), which also involved an untimely appeal from a Department determination.[9] In *Boesch*, the Department issued a determination that the claimant was ineligible for UC benefits

---

[9] We may cite an unreported decision of this Court as persuasive authority. *See* Cmwlth. Ct. Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a) (stating that an unreported panel decision of this Court, issued after January 15, 2008, may be cited for its persuasive value).

because he failed to register for employment search services under Section 401(b)(1)(i) of the Law. *Boesch*, slip op. at 1-2. The claimant did not appeal from the determination until seven months later, claiming that he did not receive the determination until after the appeal deadline had passed. *Id.* at 2. At the hearing, the claimant testified that when he received the notice, he did not take any action "[b]ecause [he] was already back to work" so "[he] wasn't worried about [u]nemployment or any of that." *Id.* at 6-7 (quoting notes of testimony). Our Court rejected this excuse for the claimant's late appeal, stating:

> [The c]laimant testified he was back to work when the determination was issued. This testimony seems to contradict [the c]laimant's assertion he was unaware of the determination. Nevertheless, the determination clearly stated: "This disqualification will continue to apply until you register." Therefore, *even though [the c]laimant may have returned to work, he was on notice that should he become unemployed again during the same benefit year, he was obligated to complete the registration process in order to obtain benefits. [The c]laimant's failure to recognize the full implication that the disqualification would continue did not provide him with justification to allow his late appeal*.

*Id.* at 7-8 (internal citations omitted) (emphasis added). Therefore, we affirmed the Board's dismissal of the appeal as untimely. *Id.* at 9.

In this case, although Claimant did not testify to exactly when he received the Notice, he did admit receiving it. Bd.'s F.F. No. 6; N.T., 5/29/20, at 7-8. As in *Boesch*, the Notice clearly stated: "This disqualification will continue to apply until you register [for employment search services]." R. Item No. 3. The Notice also informed Claimant that he needed to file an appeal by January 28, 2020 if he disagreed with the Department's determination. *Id.*; Bd.'s F.F. No 6. The record establishes that after receiving the Notice, Claimant took no action to challenge the

10

Department's decision until he was laid off again in March 2020 and his ineligibility for UC benefits resumed. *See* R. Item No. 1. Like the claimant in *Boesch*, Claimant here admitted that he "didn't care about if [he] follow[ed] whatever [the Notice said] because [he] was only off [for] two days" before he "went back to work." N.T., 5/29/20, at 7. Based on the evidence of record, the Board determined that Claimant misread the Notice and did not realize the ongoing nature of his disqualification. Bd.'s F.F. No. 7. Critically, Claimant does not challenge any of these factual findings in either his Petition for Review or his appellate brief, so they are conclusive on appeal. *Hessou*, 942 A.2d at 199. We agree with the Board that Claimant's misunderstanding of the Notice did not justify his late appeal. *See Boesch*, slip op. at 8 ("[The c]laimant's failure to recognize the full implication that the disqualification would continue did not provide him with justification to allow his late appeal.").

Claimant offered no evidence establishing that his untimely appeal was caused by fraudulent or negligent conduct by the Department or non-negligent conduct beyond Claimant's control. *See Hessou*, 942 A.2d at 198. The record shows that the Department did not provide Claimant with inaccurate or misleading information regarding the availability, timing, or need to appeal. Claimant's apparent misunderstanding of the clear language in the Notice is not the Department's error. Rather, the record establishes that Claimant's late appeal was caused by his misreading of the Notice and his deliberate decision to not pursue an appeal after his return to work. We conclude, based on the evidence of record, that

11

Claimant's late appeal was not caused by an administrative breakdown, but by his own negligence.[10]

## Conclusion

Accordingly, because we conclude that Claimant's appeal was untimely and he did not establish a right to *nunc pro tunc* relief, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

---

[10] Although Claimant does not argue this issue on appeal, we also conclude, based on the evidence of record, that he failed to establish an administrative breakdown with regard to the Department's mailing of the Notice. When he initially applied for UC benefits, Claimant notified the Department that he resided at 411 Ridge Avenue in McSherrystown, Pennsylvania. R. Item No. 1; N.T., 5/29/20, at 7. The record shows that the Department mailed both the December 26, 2019 letter and the Notice to that address. *See* R. Item Nos. 2, 3; Bd.'s F.F. No. 6. At the hearing, Claimant testified that he did not receive the Notice until after the appeal deadline had passed because he had moved out of his sister's home and she did not give him his mail. N.T., 5/29/20, at 7. While Claimant testified that he notified the Department of his change of address, *id.*, the Department's claim records show that he never updated his address with the Department, *see* R. Item No. 1. It is well settled that the claimant bears "the responsibility of notifying the Department of [a] change in address at the time it occur[s]." *Duhigg v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 1, 5 (Pa. Cmwlth. 2017). Moreover, "[n]otices . . . to [UC] claimants which state the last day to file an appeal therefrom and which are properly addressed and not returned by the postal authorities are presumed to be received, and a claimant's appeal which is not filed within [15] calendar days after notice of the action was mailed to a claimant's last known address is not timely filed." *Id.* (citation omitted). We conclude that the Department fulfilled its statutory obligation by mailing the Notice to Claimant's last known postal address, *see* 43 P.S. § 821(e), and that Claimant's failure to notify the Department of his new address was the result of his own negligence.

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marcos Garcia,                          :
                    Petitioner          :
                                        :
        v.                              :  No. 954 C.D. 2020
                                        :
Unemployment Compensation               :
Board of Review,                        :
                    Respondent          :


# **O R D E R**


AND NOW, this 11th day of June, 2021, we hereby AFFIRM the August 27, 2020 Order of the Unemployment Compensation Board of Review.


_____
ELLEN CEISLER, Judge