# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Burrell Bryant,      :
       Petitioner      :
       :
       v.      :    No. 1576 C.D. 2018
       :    Submitted: October 11, 2019
Unemployment Compensation      :
Board of Review,      :
       Respondent      :

BEFORE:     **HONORABLE MARY HANNAH LEAVITT,** President Judge
              **HONORABLE RENÉE COHN JUBELIRER,** Judge
              **HONORABLE CHRISTINE FIZZANO CANNON,** Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**           **FILED: January 17, 2020**

Burrell Bryant (Claimant) petitions for review of an September 27, 2018 Order of the Unemployment Compensation (UC) Board of Review (Board) that dismissed Claimant's appeal of a Referee's Decision to the Board as untimely pursuant to Section 502 of the Unemployment Compensation Law (Law), 43 P.S. § 822.[1] On appeal, Claimant argues that the Board erred in dismissing his appeal because Claimant's employer, Aerotek Inc. (Employer), admittedly reported an incorrect reason for separation, which led to Claimant being wrongfully denied UC benefits and assessed a fault overpayment. Based on a review of the record,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 822 (providing for a 15-day appeal period before a decision by a referee is deemed final).

including Claimant's admissions that he received the Referee's Decision and filed an untimely appeal because he thought an appeal was unnecessary given the facts, we are constrained to affirm.

## I.    BACKGROUND

Claimant worked for Employer, a temporary employment agency. On June 4, 2017, Claimant filed an application for UC benefits indicating that he separated from Employer for lack of work. (Claim Record, Certified Record (C.R.) Item 1.) On August 15, 2017, Employer submitted information to UC authorities, indicating that Claimant was discharged for willful misconduct, namely sleeping on the job. (Service Center Ex. 2, C.R. Item 3.) Upon receipt of this information, the local Service Center requested additional information from Claimant and Employer to clarify the discrepancy. On December 7, 2017, the local Service Center sent Claimant a document entitled "Advance Notice" advising him that his UC benefits may be temporarily or permanently terminated and he may be subject to an overpayment because Employer reported Claimant had been discharged. (C.R. Item 2.) On December 8, 2017, the local Service Center sent Claimant a questionnaire related to his separation from employment, as well as his employment for a temporary employment agency. (*Id.*) On January 2, 2018, the local Service Center left a voicemail message for Claimant asking him to call the local Service Center to provide information related to his eligibility. (*Id.*) There is no indication in the record that Claimant responded directly to UC authorities about these requests.

At the same time it was seeking information from Claimant, the local Service Center was also requesting additional information from Employer. On

December 8, 2017, it sent Employer a letter and enclosed two questionnaires about Claimant's employment and separation. (C.R. Item 3.) It also faxed a "Notice of Application and Initial Request for Information" to Employer. Employer did not respond to any of the requests.

Accordingly, in early January 2018, the local Service Center issued two notices of determination. The first considered Claimant's eligibility for benefits under Section 402(e), 43 P.S. § 802(e), and Section 3 of the Law, 43 P.S. § 752.[2] (Notice of Determination, C.R. Item 4.) The local Service Center rendered Claimant ineligible for benefits based upon him being discharged. (*Id.*) That notice of determination was mailed on January 5, 2018, to Claimant at his Allentown, Pennsylvania address (Allentown address). The notice plainly stated at

---

[2] Section 402(e) provides "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. § 802(e). Section 3 is a declaration of public policy and provides:

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own. The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

43 P.S. § 752.

the top of the page: "The Last Day to File an Appeal from this Determination is 1/22/18." (*Id.*) Three days later, the local Service Center issued a Notice of Determination Overpayment of Benefits, wherein Claimant was advised he received $11,571 in UC benefits to which he was not entitled. (C.R. Item 6.) The local Service Center found it was a fault overpayment because Claimant "knowingly reported [he was] off due to a lack of work when [he was] discharged." (*Id.*) Similar to the first notice of determination, this notice also stated at the top of the page: "The final day to timely appeal this determination is JAN 23, 2018[.]" (*Id.*) Enclosed with each notice was a page containing appeal instructions. (C.R. Items 4 & 6.)

### A. Claimant's Appeal to the Referee

Claimant faxed his appeal to the UC authorities on April 27, 2018. (C.R. Item 7.) The subject line of Claimant's appeal reads "Past Deadline Appeal." (*Id.*) Therein, he stated that he "received correspondence, in December 2017, that a pa[s]t employer of [his] . . . submitted information to PA UC that [he] was terminated for sleeping on the job[,]" and this resulted in him becoming ineligible for benefits. (*Id.*) Claimant's appeal continued that he "confronted . . . [E]mployer about this" because it was not true and requested Employer retract the information. (*Id.*) According to Claimant's appeal, Employer "immediately admitted an 'error'" and "instruct[ed him] to appeal the information[,]" which Employer would not contest. (*Id.*) He maintained he responded to UC authorities via mail and fax, which he thought would preserve his appeal. On March 28, 2018, Claimant stated he again contacted Employer to request a retraction, which Employer advised it would do. He then called the UC authorities to inquire whether Employer

4

followed through "and was advised to draft this late appeal request because [Employer] had not in fact retracted its claim." (*Id.*) With his appeal, Claimant enclosed copies of the email exchanges he had with Employer, dated January 5-8, 2019,[3] and March 28, 2018.[4] Claimant did not enclose the letter or fax he allegedly sent to the UC authorities. Nor are there any copies of those documents in the certified record.

On May 21, 2018, the Referee's Office called Claimant to verify his address and Employer's location. Claimant advised he was working in Tampa, Florida, until July 1, 2018, and provided a temporary address to be used (Tampa address). (Report of Telephone call on Hearings, C.R. Item 9.) A notice scheduling a telephone hearing for June 7, 2018, on the issue of "whether [Claimant] filed a timely and valid appeal from the initial determination," was mailed to Claimant at both the Allentown address and the Tampa address he provided. (C.R. Item 10.) The letter addressed to the Tampa address was returned as "Not Deliverable as Addressed[;] Unable to Forward." (*Id.*)

Claimant evidently received the notice sent to the Allentown, Pennsylvania, address because he participated by telephone in the Referee's hearing on June 7, 2018. Employer did not participate. At the start of the hearing, the Referee requested Claimant's mailing address, and he responded by providing the Allentown address. (Hr'g Tr. at 2, C.R. Item 11.) The Referee inquired as to the

---

[3] In its January 8, 2018, response to Claimant's email dated January 5, 2018, Employer acknowledged a "mistake" and advised Claimant "all you have to do is appeal/contest it and we will not fight it." (C.R. Item 7.)

[4] In this email exchange, Employer advised "We'll do what we can on our end to correct and update the information with the Unemployment Department but we do not dictate the requirements of this agency and you should consider following [its] guidance to remedy the matter as quickly as possible." (C.R. Item 7.)

5

Tampa address, and Claimant replied that he anticipated being at that address, but because of a hurricane, he was not, so he did not want anything mailed to that address any longer. (*Id.*)

Claimant testified that he first saw the determinations in January, and upon receipt, he called Employer for the purpose of "Employer . . . contact[ing] the Department." (*Id.* at 4.) Since nothing occurred, he followed up by email with Employer so he would have written evidence. Claimant acknowledged Employer advised him to appeal. When asked by the Referee why Claimant did not do as Employer advised and file an appeal "to protect [himself]," Claimant responded:

> Because in this instance, I didn't think the -- I was appealing, let's say, real information, you know, and I was looking at it from an information standpoint. Like let's say if an Employer says you were fired for being late and I knew that I was only late two times, I wasn't late any more than that and both of those times were medical emergencies, I would look at that as something appealable because, you know, what they're saying has truth to it, but I'm arguing -- I have an argument for that and so I would appeal something like that. But the information was so false and the Employer had no -- they didn't try to argue it or try to say well we have something from the client that says you were sleeping so -- and they made a mistake is what I'm saying. And so that's why I didn't appeal it because I didn't think, like, I didn't like it was a judgment or the determination I was appealing -- I would have been -- I thought it would've been their information and that's where I was incorrect.

(*Id.* at 5.) He further stated that he did not follow Employer's advice because the information came from a recruiter, not human resources, who could correct the error. Claimant testified he subsequently contacted human resources, after which he followed up with the UC authorities to see if Employer did as it had promised to remedy the situation. According to Claimant, he was told by the UC authorities that they "haven't gotten any information that contests the original claim" and

6

"that person said I really suggest you file a late appeal . . . ," which Claimant finally did. (*Id.*) Because the hearing was to address the timeliness of Claimant's appeal, the Referee did not accept evidence on the merits of Claimant's appeal.

Following the hearing, the Referee issued a Decision dismissing Claimant's appeal as untimely. In reaching this conclusion, the Referee made the following findings of fact:

1. On January 5, 2018, the Service Center issued a Notice of Determination[,] which found the [C]laimant ineligible to receive benefits under Section 3 of the . . . Law based on his separation from his employment with [Employer].

2. January 22, 2018 was the deadline to file an appeal to the Notice of Determination[,] which disqualified the [C]laimant based on his separation from employment.

3. On January 8, 2018, the Service Center sent a Notice of Determination to the [C]laimant[,] which imposed a fault overpayment of benefits against him in the total amount of $11,571 under Section 804(a) of the . . . Law for benefits he received beginning with claim week ending August 12, 2017 through claim week ending December 30, 2017.

4. January 23, 2018 was the deadline to file an appeal to the Notice of Determination[,] which imposed a fault overpayment of benefits against the [C]laimant.

5. The Service Center sent the Notices of Determination to the [C]laimant at his last known mailing address.

6. The [C]laimant contacted the [E]mployer because he disputed the information contained in the determination regarding sleeping on the job.

7. By email dated January 8, 2018 the [E]mployer advised the [C]laimant to file an appeal to the Notice of Determination.

7

8. The [C]laimant later contacted human resources about the information contained in the determination pertaining to the discharge.

9. Human resources also directed the [C]laimant to follow the Department's procedures.

10. On April 27, 2018, the [C]laimant filed his appeal by facsimile as indicated by the fax banner.

11. The [C]laimant did not file his appeal on or before the January 22, 2018 and January 23, 2018 deadlines.

(Referee Decision, Findings of Fact (FOF) ¶¶ 1-11.)

Citing Section 501(e) of the Law, 43 P.S. § 821(e), which provides a party 15 days to appeal a notice of determination before it is deemed final, the Referee found Claimant's appeal on April 27, 2018, was beyond the January 22 and January 23, 2018 deadlines. Accordingly, the Referee concluded she lacked jurisdiction and dismissed the appeal as untimely.

The Referee's Decision was mailed to the Allentown address that Claimant verified at the hearing. At the top of the first page and immediately following the Referee's Decision, the Decision stated the final date to appeal is June 22, 2018. (Referee's Decision at 1, 3.) The Decision detailed the steps a party should take to perfect an appeal. (*Id.* at 3-4.)

On the same date the Decision was issued, Employer's third-party representative, Equifax, faxed the Referee's Office a letter, which stated that the Claimant was not discharged; the reason for separation was lack of work. (C.R. Item 13.) The letter further stated that Equifax "sent a corrected letter on this [C]laimant as of 3-30-18 but it [wa]s not at the hearing level." (*Id.*) A copy of the letter Equifax purportedly sent in March 2018 is not part of the certified record. The Referee's Office responded by email the same date advising the Decision was

already mailed.  (June 7, 2018 email to Equifax, C.R. Item 13.)  The email further advised "if [the Decision] is not in your favor, you can request a further appeal using the instructions in the Decision.  If it is in your favor, then the [C]laimant would have to be the one to file for a further appeal."  (*Id.*)  Employer forwarded Claimant a copy of the documentation it sent to the Referee via email, but not the Referee's response.  (C.R. Item 14.)

### B.    Claimant's Appeal to the Board

Claimant filed an appeal of the Referee's Decision on June 25, 2018.  In his email appeal, Claimant included a subject line, which stated "Past Deadline Appeal 18-09-4032," which referred to the appeal number.  (C.R. Item 15.)  By letter dated July 2, 2018, the Board advised Claimant that it received the appeal, but it appeared untimely.  (C.R. Item 16.)  The letter further advised Claimant that he could request a hearing to explain why he believed his appeal was timely.  (*Id.*)  The letter was mailed to Claimant at both the Allentown address and Tampa address.  (*Id.*)  The letter sent to the Tampa address was returned as undeliverable. (*Id.*)  On July 12, 2018, Claimant emailed the Board and copied Employer.  Instead of asking for a hearing, Claimant appears to direct the email to Employer and threatens legal action against Employer.[5]  (July 12, 2018 Email from Claimant,

---

[5] The email stated:

> The . . . [B]oard . . . is not giving me relief regarding your clerical error as it pertains to my separation with [Employer.]  At this point I have suffered damages and I am [in] position to suffer further damages as a result of this error that [Employer] was unable to initially avoid nor [sic] correct after the fact.  Please forward me the information for your legal department that will handle any action taken against you over this.  Thank you.

**(Footnote continued on next page…)**

C.R. Item 16.)  The Board subsequently sent Claimant a second letter on July 13, 2018, virtually identical to its July 2, 2018 letter, advising Claimant that he "must request in writing that a hearing be scheduled to allow [Claimant] the opportunity to set forth [his] reasons as to why [he] believe[s] [his] appeal was timely filed." (C.R. Item 16 (emphasis omitted).)  On July 16, 2018, Claimant emailed the chief of staff of a state senator and copied Employer and Board on the email.  Therein, he stated that he received notice of an overpayment in January 2018 from the local Service Center, and reached out to Employer to correct it, but "[t]he clerical error was never fixed forcing me to file what would be a late appeal."  (July 16, 2018 Email from Claimant, C.R. Item 16.)  Claimant further stated he did not appeal because he would be forced to take off work.  (*Id.*)  On July 19, 2018, Claimant emailed the Board and other UC authorities, calling the Board an "antagonist" that is "insist[ing] on the continued use of state resources to pursue this [E]mployer['s] admittedly false claim."  (C.R. Item 16.)  Claimant faxed a copy of the email to the Board the same date.  The fax cover sheet indicates an address in Brookhaven, Pennsylvania (Brookhaven address).  (July 19, 2018 Fax Cover Sheet, C.R. Item 16.)  On July 24, 2018, Claimant emailed a state representative and the Board, asking to further appeal the Referee's decision.  Therein, Claimant states his appeal was not received until June 25, 2018, "because I had not seen the original letter with the deadline on it as I have moved from the address it was mailed to."  (July 24, 2018 Email from Claimant, Board Ex. 4, C.R. Item 16.)  Claimant provided the Brookhaven address and requested a telephone hearing.  (*Id.*)

---

**(continued…)**
(*Id.*)  The email included a copy of Claimant's June 25, 2018 appeal to the Board.

The Board subsequently issued an order remanding the matter to a referee (Remand Referee)[6] "[t]o schedule a hearing for the purpose of providing [Claimant] with an opportunity to testify regarding whether [Claimant]'s appeal to the Board was, or should be accepted as if, timely filed." (C.R. Item 18.) The hearing was scheduled for August 28, 2018. At the hearing, the Remand Referee asked Claimant to provide his address for the record, to which Claimant provided the Allentown address. (Remand Hr'g Tr. at 1, C.R. Item 20.) The Remand Referee advised Claimant that the address on file was in Brookhaven and asked Claimant which address was correct. (*Id.*) Claimant responded that his permanent address is the Allentown address, but because he is commuting, he also uses the Brookhaven address, but either address would work. (*Id.* at 1-2.)

On the issue of timeliness of his appeal to the Board, Claimant testified as follows. He did not receive the Referee's Decision, which was mailed to the Allentown address, which Claimant admitted was a correct address, as well as his permanent address. (*Id.* at 4.) Claimant "was not present at that address at that time." (*Id.*) He called the Board and provided the Brookhaven address. He believes the Referee's Office forwarded the Decision to him. He realized that his appeal was filed late. When asked why he filed a late appeal, Claimant responded:

> I filed a late appeal because prior -- the only prior to that, I was trying to get the state to drop this matter on the account of the Employer not challenging my unemployment in the first place and my Employer made the mistake in writing a letter on June 7th that was sent to Experian [sic] that said that this should have never went [sic] to a hearing. So, I spent the whole week trying to get the state to act in a common sense manner and not have to waste state resources on this.

---

[6] The referee who presided over the remand hearing was not the same Referee who issued the Decision.

11

(*Id.* at 5.) Claimant filed his appeal on June 25 after a state legislator's office asked him to do so. (*Id.* at 5-6.) Claimant reiterated that this case should never have proceeded as far as it did, given Employer's admitted mistake.

On September 27, 2018, the Board issued its Order, dismissing Claimant's appeal of the Referee's Decision as untimely under Section 502 of the Law. In reaching this conclusion, the Board made the following findings of fact:

1. On June 7, 2018, a Referee held a hearing at which the [C]laimant confirmed his permanent mailing address to be [in] Allentown, PA 18109. He did not offer an alternative address.

2. On June 7, 2018, the Referee issued a decision which dismissed the [C]laimant's appeal of the Department's determinations as untimely pursuant to Section 501(e) of the . . . Law.

3. A copy of the Referee's decision was mailed to the [C]laimant at his last known post office address [in] Allentown, PA 18109, on the same date.

4. The decision was accompanied by notice advising that the interested parties had fifteen (15) days in which to file a valid appeal.

5. There is no indication that the decision mailed to the [C]laimant was returned by the postal authorities as undeliverable.

6. The [C]laimant's appeal from the Referee's decision, in order to be timely, had to have been filed on or before June 22, 2018.

7. The [C]laimant's appeal was filed on June 25, 2018, by e-mail.

8. The [C]laimant delayed in filing the appeal because he was not residing at his address of record.

9. There is no evidence that the [C]laimant was misinformed or misled by the unemployment compensation authorities regarding his right or the necessity to appeal.

(Board Order, FOF ¶¶ 1-9.)

12

The Board reasoned that if Claimant was not living at the address he confirmed with the Referee, he should have provided a different address, and "[a]ny delay in the [C]laimant's receipt of the [D]ecision was due to his own negligence and not to any administrative breakdown." (Board Order at 2.) Thus, the Board concluded Claimant did not show he had good cause for filing a late appeal. The Board further acknowledged Claimant's argument that Employer provided the wrong information, which triggered this matter. "However," the Board noted, "a breakdown in the administrative process occurs only when the administrative board or body is negligent, not the employer." (*Id.*) The Board continued that the administrative process is designed to remedy errors, but to do so, a claimant must file a timely appeal. (*Id.* (citing *Greene v. Unemployment Comp. Bd. of Review*, 157 A.3d 983, 991 (Pa. Cmwlth. 2017)).) Because Section 502 of the Law is mandatory, and there was no evidence of fraud, non-negligent conduct, or a breakdown in the administrative system, the Board concluded it lacked jurisdiction to accept Claimant's untimely appeal. (*Id.*) Claimant sought reconsideration of the Board Order, which the Board denied. (C.R. Items 22-23.) Claimant now petitions this Court for review of the Board's Order.

## II.   PARTIES' ARGUMENTS

On appeal,[7] Claimant argues the merits of his underlying appeal. Specifically, he challenges whether the Board erred in disregarding evidence that Employer mistakenly reported he was terminated when the actual reason for

---

[7] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

13

separation was lack of work. He asserts "these proceedings should have never commenced" and the Board "erred as a matter of ethics in failing to remand this matter . . . ." (Claimant's Brief (Br.) at 5.) Claimant disputes the Board's finding that he filed the appeal late because he was not living at the Allentown address, claiming it was because he was trying to resolve this issue amicably.[8] (*Id.* at 6.) He admits to filing both of his appeals late, the first on April 27, 2018, appealing the notices of determination to the Referee, and the second on June 25, 2018, appealing the Referee's Decision to the Board. (*Id.* at 5-6.) However, based upon Employer's acknowledged error, Claimant argues the Board's Order should be reversed. As for the Board's reliance on *Greene*, Claimant asserts *Greene* "is not appropriate to use in the discussion for this case because in th[at] case it was Unemployment whose [sic] alleged to have made the error not the Employer." (*Id.* at 8.) According to Claimant, "[c]ase law where the [e]mployer made an error during verifying the cause of separation of the employee would have been relevant . . . ." (*Id.*)

The Board responds that Claimant has not established good cause for filing his appeal to the Board late. The Board argues Claimant told the Remand Referee at the Remand Hearing that he was not present at the Allentown address, which he confirmed with the Referee at the original hearing was the correct address to send correspondence. Thus, the Board asserts Claimant has not shown the late appeal was due to non-negligence. The Board also argues Claimant's attempts to get Employer to correct its error instead of appealing does not constitute good cause.

---

[8] Claimant asserts the transcript of the Remand Hearing "was not [his] true testimony." (Claimant's Br. at 2, 6.) Claimant does not elaborate in what way the transcript does not accurately reflect his testimony, except to note that "[t]he discrepancy in the content of the transcript has been reported to Dauphin County law enforcement." (*Id.* at 6.)

14

The Board, instead, said the "proper route would have been to file a timely appeal." (Board's Br. at 7.) It points out that Claimant has not alleged that the UC authorities "insinuated to him that an appeal was not necessary." (*Id.* at 8.) Nor does the error by Employer constitute fraud, the Board argues, citing *Greene*. Absent fraud or a breakdown by administrative authorities, the Board asks the Court to affirm its Order.

## III.    TIMELINESS OF CLAIMANT'S APPEAL

Section 502 of the Law governs an appeal of a referee's decision to the Board. It provides, in pertinent part, that "[t]he parties . . . shall be duly notified . . . of the referee's decision, and the reasons therefor, which **shall be deemed the final decision** of the board, **unless an appeal is filed therefrom, within fifteen days** after the date of such decision . . . ." 43 P.S. § 822 (emphasis added). This statutory time frame is memorialized in the Department of Labor and Industry's regulations as well. *See* 34 Pa. Code § 101.82(a) ("A party seeking to appeal a Department determination shall file an appeal . . . on or before the 15th day after the date on which notification of the decision of the Department was . . . mailed to him at his last known post office address."). It is well-settled that "the fifteen-day time period in which to file an appeal is mandatory. If an appeal is not filed within that time limit, the determination becomes final, thereby depriving the Board of jurisdiction over the matter." *UGI Utils., Inc. v. Unemployment Comp. Bd. of Review*, 776 A.2d 344, 347 (Pa. Cmwlth. 2001). Even an appeal that is filed one day late is untimely. *Dumberth v. Unemployment Comp. Bd. of Review*, 837 A.2d 678, 681 (Pa. Cmwlth. 2003).

15

We have explained that "[a]ppeal periods . . . are jurisdictional and may not be extended as a matter of grace or indulgence; otherwise, there would be no finality to judicial action." *Dumberth*, 837 A.2d at 681. Therefore, the party seeking to file a late appeal bears a heavy burden to show that one of the limited circumstances in which an untimely appeal may be considered exists. *Hessou v. Unemployment Comp. Bd. of Review*, 942 A.2d 194, 198 (Pa. Cmwlth. 2008). Allowable exceptions include fraud or a breakdown in the administrative process, or when there is a "non-negligent failure to file a timely appeal which was corrected within a very short time, during which any prejudice to the other side of the controversy would necessarily be minimal." *Bass v. Commonwealth*, 401 A.2d 1133, 1135-36 (Pa. 1979). *Nunc pro tunc* relief for non-negligent conduct is generally reserved for only those "unique and compelling cases in which the appellant has clearly established that [the petitioner] attempted to file an appeal, but unforeseeable and unavoidable events precluded [the petitioner] from actually doing so." *Criss v. Wise*, 781 A.2d 1156, 1160 (Pa. 2001).

Here, the Referee found Claimant's appeal of the notices of determination from the local Service Center untimely; the Board then dismissed Claimant's subsequent appeal of the Referee's Decision to it as untimely and did not address Claimant's first-level appeal. On appeal to this Court, we address the Board's action. The Board's findings of fact suggest that the Board dismissed Claimant's appeal as late because he was not residing at the address Claimant provided to the Referee. Claimant argues to this Court that his "**address was not the issue**." (Claimant's Br. at 6 (emphasis in original).) Based upon Claimant's testimony that he did not receive the Referee's Decision mailed to the Allentown address because he "was not present at that address at that time," (Remand Hr'g Tr. at 4), we

16

understand the Board's belief that mailing was an issue. However, based upon Claimant's more comprehensive response when asked point-blank by the Remand Referee why Claimant filed the late appeal, (*id.* at 5), it is apparent that Claimant focuses on the same argument he has made throughout these proceedings, namely, that his Employer committed a blatant error and Claimant had no duty to file an appeal to correct it. Although the Board's numbered factual findings do not address this argument directly, a review of the Board's "Discussion" section does. The Board restates Claimant's position, then concludes that an employer providing incorrect information does not constitute a breakdown in the administrative process as required in order to be entitled to *nunc pro tunc* relief. (Board Order at 2.)

Claimant faults the Board for relying upon this Court's decision in *Greene*. In *Greene*, a claimant alleged he was told by UC representatives that he was not entitled to UC benefits for the same time period he was receiving severance pay. Approximately a year and a half later, the claimant reopened his existing claim and received a notice of determination stating the severance was deductible. The claimant did not appeal this determination until nearly three months had passed. The referee and Board found the claimant's appeal untimely. On appeal to this Court, the claimant argued that he was misled by UC representatives and his late appeal should be accepted as a breakdown in the administrative process. We disagreed. We first noted that the misinformation must have related to the necessity to file an appeal. *Greene*, 157 A.3d at 991. We concluded the alleged misstatements did not address "the availability, timing[,] or need for an appeal." *Id.* at 992. We next stated that the error was not the equivalent of fraud, but was an error that "the administrative process was designed to remedy." *Id.* at 993 (citation omitted). Accordingly, we affirmed the Board's order.

17

Claimant argues *Greene* is factually dissimilar because it involved an error by the UC authorities, not an employer, and "[c]ase law where the [e]mployer made an error during verifying the cause of separation of the employee would have been relevant." (Claimant's Br. at 8.) This Court's recent decision in *DiBello v. Unemployment Compensation Board of Review*, 197 A.3d 819 (Pa. Cmwlth. 2018), is that case, although it did not involve the employer incorrectly reporting the reason for separation but instead involved an employer's error reporting the number of weeks a claimant worked. Regardless of the nature of the employer's error, *DiBello* controls here.

In *DiBello*, a claimant filed a claim for UC benefits. A notice of financial determination was issued wherein a local service center determined she was financially eligible for 18 weeks instead of 26 weeks. The claimant filed an appeal of the determination two months late. At a hearing before a referee, the claimant testified she did not read the notice and contended that her employer misreported the number of weeks she worked. The referee and subsequently the Board concluded the claimant's appeal was untimely.[9] On appeal to this Court, the claimant argued the Board erred in denying her *nunc pro tunc* relief based upon the employer's error. We held that an "[e]mployer's error does not constitute [an] administrative breakdown . . . because [an e]mployer is not an administrative board or body," and *nunc pro tunc* relief is warranted only where there is a breakdown or fraud by UC authorities. *Id.* at 822 (citing *Pickering v. Unemployment Comp. Bd.*

---

[9] In *DiBello*, the claimant's appeal was determined untimely pursuant to Section 501(e) of the Law. Here, the Board dismissed Claimant's appeal from the Referee's Decision under Section 502. Section 501(e) provides for first-level appeals to a referee, whereas Section 502 deals with appeals from a referee's decision to the Board. The time period in both sections is identical, 15 days. The analysis for *nunc pro tunc* relief under either section is also the same.

*of Review*, 471 A.2d 182, 183-84 (Pa. Cmwlth. 1984)). We further held that misreading a determination does not excuse a late appeal. *Id.* Accordingly, we affirmed the Board's order, dismissing the appeal, as untimely.

Here, there is no dispute Claimant filed a late appeal from the Referee's Decision to the Board. The Board remanded the matter to a referee to permit Claimant an opportunity to explain his late filing. At the remand hearing, Claimant testified he filed his appeal late because he was "trying to get the state to act in a common sense manner and not . . . waste state resources on this." (Remand Hr'g Tr. at 5.) We understand Claimant's frustration and appreciate his desire to resolve this matter amicably; however, based on our precedent, we cannot conclude that his efforts, regardless of how noble, warrant *nunc pro tunc* relief. As we stated in *DiBello*, an employer's error is not the equivalent of an administrative breakdown. Claimant makes no allegation that any UC authorities or representatives misled him about his rights.[10] *See Greene*, 157 A.3d at 991. We also cannot find that Claimant acted non-negligently. Claimant admits that he was advised on multiple occasions by multiple sources to file an appeal disputing Employer's reported cause of separation. Employer, itself, cautioned Claimant twice to file an appeal to the Referee when Claimant first learned of the error. (C.R. Item 7.) Unfortunately, Claimant did not file the appeal to either the Referee or the Board until the deadline to appeal had passed and has not met the heavy burden to show one of the limited circumstances for *nunc pro tunc* relief exists. *Hessou*, 942 A.2d at 198.

---

[10] In his appeal of the notices of determination, Claimant testified the UC authorities told him to file an appeal even though it was late. (C.R. Item 7.)

19

Because "[a]ppeal periods . . . are jurisdictional," we cannot extend[] [Claimant's appeal period] as a matter of grace or indulgence." *Dumberth*, 837 A.2d at 681.[11]

## IV. CONCLUSION

These are hard facts. We empathize with Claimant, who has been assessed an $11,000 fault overpayment based on Employer's error, but as we stated in *Greene*, "the administrative process was designed to remedy" these types of errors. 157 A.3d at 992 (citation omitted). For whatever reasons, beginning with Claimant apparently not answering the local service center's requests for information, his decision not to file timely appeals of the service center determinations, notwithstanding being told to file an appeal, and culminating in his late appeal to the Board, Claimant did not try to comply with that process. Timely filing an appeal from an order is essential to take advantage of that process. *Constantini v. Unemployment Comp. Bd. of Review*, 173 A.3d 838, 844 (Pa. Cmwlth. 2017)

---

[11] The dissent proposes treating Claimant's Petition for Review as a request for writ of error *coram nobis*, which is an "ancient writ." *McKnight v. Dep't of Transp.*, 549 A.2d 1356, 1358 (Pa. Cmwlth. 1988). It is used "to nullify or reform a judgment" and "lies only where facts exist extrinsic of the record, unknown and unknowable by the exercise of diligence at the time of its rendition, and which would, if known, have prevented the judgment either in its entirety or in the form in which it was rendered." *Commonwealth v. Harris*, 41 A.2d 688, 690 (Pa. 1945). To avail one "of the remedy of a writ of error *coram nobis* he must show that it was by no fault or negligence of his that the error in fact assigned was not made to appear at the former trial." *Id.* at 691. Unfortunately, that is not the case here. While Claimant did not contribute to the initial misreporting of the error, before the fault overpayment was found, Claimant was contacted by the local Service Center to respond and did not. Accordingly, the Service Center acted upon the information it had before it and found Claimant ineligible. Aware of the Service Center's determination, Claimant did not timely seek appeal to the Referee. He further did not timely seek appeal of the Referee's decision to the Board. Had he responded in the first instance, or second or third instance, Claimant could have presented evidence in support of his position. As stated by the Superior Court in *Commonwealth v. Taylor*, 165 A.2d 390, 391 (Pa. Super. 1960), "a petition for writ of error *coram nobis* . . . cannot be used as . . . a substitute for an appeal."

20

("Failure to timely appeal an administrative agency's action is a jurisdictional defect . . . ."). It is difficult for the Court to have to affirm here, but, Claimant's appeal of the Notice of Determination admittedly was not timely, and Claimant has not provided reasons that, under our precedent, satisfy the "heavy burden" to show one of the limited circumstances for *nunc pro tunc* relief exists. *Hessou*, 942 A.2d at 198. Bound by the law, we are constrained to affirm the Board's Order, dismissing Claimant's appeal.

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Burrell Bryant,                              :
                    Petitioner              :
                                             :
            v.                               :   No. 1576 C.D. 2018
                                             :
Unemployment Compensation                    :
Board of Review,                             :
                    Respondent              :

# **O R D E R**


    **NOW**, January 17, 2020, the Order of the Unemployment Compensation Board of Review, dated September 27, 2018, is **AFFIRMED.**

 

                 _____
                 **RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Burrell Bryant,
               Petitioner

              v.

Unemployment Compensation Board
of Review,
               Respondent

:
:
:
:
:
:
:
:
:
:

No. 1576 C.D. 2018
Submitted: October 11, 2019

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

<u>OPINION NOT REPORTED</u>

DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT             FILED: January 17, 2020

The Department of Labor and Industry (Department) has taken the extreme position that it must permanently close an unemployment compensation file 16 days after a staff person makes a decision unless a party with standing has requested an administrative hearing. This is so even when all parties with standing concede that the staff decision was based upon erroneous information. Simply, the Department's position betrays the public trust. A hearing is a mechanism designed to resolve a controversy between the parties, not to insulate the staff from correcting its records. Respectfully, I dissent from the majority's decision.

The Department contends that Burrell Bryant (Claimant) must refund the $11,571 in unemployment benefits he received even though the parties agree that Claimant was entitled to those benefits. Indeed, Claimant's separating employer, Aerotek, Inc. (Employer), notified the Department in writing that its agent, Equifax, incorrectly stated on the "State Information Data Exchange System" that Claimant

was discharged for misconduct when, in actuality, he lost his job for lack of work. Notwithstanding Employer's explanation and correction of Equifax's erroneous on-line report, the Department insists that Claimant is liable for a "fault overpayment." This insistence constitutes an abuse of prosecutorial discretion and abdication of the Department's responsibility to administer Pennsylvania's unemployment compensation program. Indeed, the Department's position shocks the conscience.

In June of 2017, the Department granted unemployment benefits to Claimant upon his separation from Employer. In August of 2017, Employer's agent, Equifax, reported on the "State Information Data Exchange System" that Claimant had been dismissed for sleeping on the job. In December of 2017, the Department sought more information, but neither Claimant nor Employer responded. However, in January of 2018, Claimant contacted Employer, which acknowledged its error. In March, Employer so notified Claimant in writing. In June of 2018, Equifax sent a letter to the Department about Claimant's separation from Employer that stated "[T]his is NOT a discharge. This is a lack of work." Certified Record, Item 13 at 1. The letter further stated, "It shouldn't have gone to the hearing level because this is a lack of work." *Id.*

On January 8, 2018, the Department determined that Claimant was not entitled to any benefits and had to refund the benefits he had received, *i.e.*, $11,571. It is this determination that the Department refuses to revise in spite of the written acknowledgment from Employer that its agent made a mistake and that Claimant was entitled to the benefits he received.

First, the staff's determination that Claimant has a debt of $11,571 was arbitrary. Claimant stated to the Department, under penalty of law, that his

MHL-2

separation from employment was caused by lack of work. After Department staff found Equifax's contrary on-line statement on Claimant's separation, it requested more information. In spite of Employer's silence, the staff arbitrarily credited Equifax's on-line statement over Claimant's verified statement. The Department's bias in handling this matter in itself raises a due process problem. As does the Department's retroactive revocation of Claimant's benefits without a prior hearing.

Second, the Department, which is a party in every unemployment compensation matter, at every stage, has an obligation to act upon the corrected information in its capacity as administrator of the unemployment compensation program and prosecutor where there exists a dispute. Section 502 of the Unemployment Compensation Law (Law)[1] states that the Unemployment Compensation Board of Review (Board) must "afford[] the parties *and the* [*D*]*epartment* reasonable opportunity for a fair hearing[.]" 43 P.S. §822 (emphasis added). The statute also requires that the "parties and their attorneys or other representatives of record and *the [D]epartment* shall be duly notified of the time and place of a referee's hearing and of the referee's decision[.]" *Id.* (emphasis added). Following a decision by a referee or the Board, "the claimant, *the Department* or an affected employer" each has the right to appeal. 34 Pa. Code §101.90 (emphasis added). In short, the Department, which granted Claimant benefits and then reversed itself, has been a silent, but present, participant in this case.[2] Once the Department

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §822.

[2] The Department appeals referee decisions where it disagrees with the referee's application of the law. *See, e.g.*, *Frimet v. Unemployment Compensation Board of Review*, 78 A.3d 21 (Pa. Cmwlth. 2013) (Department intervened before Board to contest referee's award of benefits).

learned of the error in its own official records, it should have immediately withdrawn its notice of determination of a fault overpayment. Instead, the Department continues to advance the fiction that Claimant is liable to the Department for a debt of $11,571.

In *DiBello v. Unemployment Compensation Board of Review,* 197 A.3d 819 (Pa. Cmwlth. 2018), the Department asserted that it cannot correct an error in benefit amount because corrections can only be made via an administrative hearing. This is an unfounded and incorrect assumption. The administrative remedy was created to resolve controversies, not to ossify the Department's records. The existence of a quasi-judicial remedy does not relieve the Department of its responsibility as the administrator of the unemployment compensation program to respond to reasonable requests. By the Department's logic, a claimant who discovers he was overpaid benefits cannot return the overpayment if he makes the discovery more than 15 days after the grant of benefits.

Assuming, *arguendo*, the staff determination that Claimant owes the Department $11,571 is a quasi-judicial decision, it is not written in stone, any more than a judicial verdict is so written. Under the common law writ of *coram nobis*, a court can correct its judgment upon discovery of a fundamental factual error that was unknown and unknowable in the original proceedings. *See Commonwealth v. Harris*, 41 A.2d 688 (Pa. 1945). The Department has a duty to supervise the unemployment compensation program in accordance with Section 3 of the Law, which provides financial security to employees who lose their jobs through no fault of their own. 43 P.S. §752. Converting a staff action to an adjudication does not provide the Department absolute cover, as it seems to believe.

MHL-4

The Department should correct its determination in accordance with the information provided by Employer and withdraw its administrative determination of January 8, 2018, that Claimant owes it $11,571. As our Supreme Court explained in *Miller v. Unemployment Compensation Board of Review*, 476 A.2d 364, 366 (Pa. 1984), "[w]e have long refused to give overly technical, restrictive readings to procedural rules, particularly when remedial statutes such as the Unemployment Compensation [Law] are involved." Instead, the Department insists on illegally pursuing a debt it knows to be unfounded.

Claimant was deprived the due process of law guaranteed to him. That every claimant has a right to an administrative hearing under the Law is beside the point. There must be a controversy between the parties over whether unemployment benefits were properly awarded for the hearing remedy to have any relevance. Here, there was no controversy about Claimant's eligibility for benefits until the Department staff acted, incorrectly and *sua sponte*, to create one. By refusing to correct an error in its own records that results in the taking of a claimant's property without a hearing, the Department invites litigation under 42 U.S.C. §1983.

I would reverse the Board's dismissal of Claimant's appeal. I would hold that when the Department is notified of a mistake, as it was here, it must issue a decision on the merits instead of asserting it lacks jurisdiction. Only after it makes a merits decision would the 15-day period for an appeal, by the claimant or the employer, begin to run. Alternatively, I would treat Claimant's petition for review

MHL-5

as a request for writ of *coram nobis* and direct the Department to dissolve its determination that Claimant has a debt for a fault overpayment.[3]

_____

MARY HANNAH LEAVITT, President Judge

---

[3] The majority posits that a writ of *coram nobis* is not a substitute for an appeal and cites cases that reject the use of this extraordinary writ in place of a timely appeal. In those cases, however, the petitioner received a record hearing and a judgment was entered. *See Commonwealth v. Harris*, 41 A.2d 688 (Pa. 1945) (jury trial and conviction of first-degree murder); *McKnight v. Department of Transportation*, 549 A.2d 1356 (Pa. Cmwlth. 1988) (denial of statutory appeal of driver's license suspension); *Commonwealth v. Taylor*, 165 A.2d 390 (Pa. Super. 1960) (guilty plea and sentence of imprisonment). In the case *sub judice*, the determinative, and erroneous, finding on the reason for Claimant's separation from employment was made by unknown Department staff on the basis of an unverified report announced by Equifax in cyberspace. The Pennsylvania Constitution guarantees that "every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law." PA. CONST. art. I, §11. Further, our Judicial Code guarantees a right of appeal from a "final order" of every "[g]overnment unit which is an administrative agency … to the court having jurisdiction of such appeals." 42 Pa. C.S. §5105(a)(2). The writ of *coram nobis* was developed to avert a miscarriage of justice, such as the instant case.