IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gabriel S. Flores,      :
       Petitioner  :
             :
   v.        :
             :
Unemployment Compensation  :
Board of Review,      : No. 1398 C.D. 2023
      Respondent : Submitted: November 7, 2024

BEFORE: HONORABLE ANNE E. COVEY, Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge
     HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON      FILED: December 9, 2024

Gabriel S. Flores (Claimant), *pro se*, petitions this Court for review of the August 24, 2023 decision and order of the Unemployment Compensation Board of Review (Board) affirming the dismissal of Claimant's appeal as untimely. Upon review, we are constrained to affirm.

## I. Background

On February 1, 2022, Claimant started basic military training. Certified Record (C.R.) at 100 & 108. In two separate determinations dated February 10, 2022 and mailed to Claimant's home address in Pennsylvania, the Pennsylvania Department of Labor and Industry, Office of Unemployment Compensation Service Benefits (Department) concluded that Claimant did not qualify for unemployment compensation (UC) benefits because he left employment to seek other work and that he was required to repay a fault overpayment totaling $656 for claim weeks ending

February 8 and 15, 2020. *Id.* at 25 & 35. In each determination, the Department advised Claimant that he had 21 days from the date of the determination to submit an appeal and that his appeal had to be received or postmarked by March 3, 2022. *Id.* at 25-26 & 35. Each determination provided detailed instructions for filing an appeal online, by mail, by fax, by email, or in person. *Id.* at 26-27 & 35-38.

Claimant's wife emailed the Department after receiving the two determinations of the Department in mid-February 2022, receiving a response on June 2, 2022. C.R. at 100, 108 & 131. After completing his basic military training in March 2022, Claimant emailed the Department in early April 2022, and the Department responded on July 15, 2022. *Id.* at 108 & 131. On October 26, 2022, Claimant appealed the Department's February 10, 2022 overpayment determination through the UC online portal. *Id.* at 47 & 108. He apparently did not appeal the determination of ineligibility.

On January 10, 2023, a referee for the Board conducted a hearing by telephone in which Claimant and his wife participated.[1] *See* C.R. at 91-92. Claimant testified that he worked for Lowe's Home Improvement (Employer) from March 2016 to July 2021. *Id.* at 97. Claimant filed for and began receiving partial unemployment benefits in 2019. *Id.* at 101. According to Claimant, the Department incorrectly assessed an overpayment, as he was "underemployed" and working fewer hours for Employer during the weeks at issue. *Id.* at 99. Claimant testified that he "took action as soon as [he] . . . was able to get a computer and phone and try to figure out what was going on," that he "didn't actually have the mail [him]self" as he "was in California at the time," and that he was "going off the word of [his] wife." *Id.* at 102. After Claimant completed basic military training, his wife

---

[1] Employer did not participate in the hearing. C.R. at 108.

2

forwarded his mail to California. *Id.* at 102. Claimant testified that he also emailed the Department on July 15, 2022, but did not receive a response until October 29, 2022. *Id.* at 103-04. Further, Claimant averred that "[o]ne of those emails that [he] had] received that summer had told [him] that [he] could appeal it at that point, essentially." *Id.* at 104.

Claimant's wife testified that the Department responded on June 2, 2022 to her initial email inquiry, informing her of the need to obtain power of attorney in order to communicate with the Department regarding its determinations. *Id.* at 101. Attesting that Claimant did not have access to a phone or a computer during basic military training, that she "had no contact with him during" his training, and that she first had contact with him when he finished training on March 24, 2022, Claimant's wife contradicted her husband's testimony that during this training, his communication with his wife "was very brief, like less than five-minute intervals a week." *Id.* at 102-03.

By decision dated January 19, 2023, the referee dismissed Claimant's appeal as untimely under Section 501(e) of the Unemployment Compensation Law (UC Law),[2] 43 P.S. § 821(e), reasoning that

> Claimant did not provide testimony to show fraud or a breakdown in the administrative process which may have caused the late appeal. The service center determinations were received in a timely manner by [] Claimant's wife in early February of 2022. The [Department's] [n]otices of [d]etermination explain appeal procedures. []Claimant had access to the [n]otices of [d]etermination upon completion of basic training on March 24, 2022. Notwithstanding any other circumstances of this case, the [r]eferee can find no reasonable explanation for the six-month delay in the actual filing of the appeal.

---

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751-919.10.

3

> The provisions of [] Section [501(e)] of the Law, [43 P.S. § 821(e),] are mandatory, and the [r]eferee has no jurisdiction to allow any appeal filed after the expiration of the statutory appeal period. Therefore, [] Claimant's appeal is dismissed.

C.R. at 108 & 110. Claimant appealed the dismissal. *Id.* at 117.

> By decision mailed August 24, 2023, the Board affirmed, explaining:

> The record shows that while [] [C]laimant was in basic [military] training, his wife informed [him] of disqualifying and overpayment determinations prior to the final date to appeal. Even assuming he had good cause to file an untimely appeal because he was in basic [military] training, [] [C]laimant returned from [] training on March 24, 2022. However, . . . [he] did not file an appeal of the [Department's February 10, 2022] determination[] until October 26, 2022. The delay of over six months after his return does not amount to good cause. These circumstances do not show that the late appeal was caused by fraud, a breakdown in the administrative process, or by non-negligent conduct.

> The Board and its [r]eferees have no jurisdiction to decide the merits of an untimely appeal.

*Id.* at 131-32. Claimant then petitioned this Court for review.

## II. Issues

Before this Court,[3] Claimant argues that the Board erred in affirming the dismissal of his appeal as untimely, in that an administrative breakdown within the Department justified *nunc pro tunc* relief. *See* Claimant's Br. at 11-13. Claimant contends that "[t]he delayed response from the . . . [D]epartment following [his]

---

[3] Our review "is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence." *Miller v. Unemployment Comp. Bd. of Rev.*, 83 A.3d 484, 486 (Pa. Cmwlth. 2014) (citing Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704)).

4

wife's initial inquiries, coupled with the nearly four-month gap until [he] was informed that verbal consent was needed to discuss the claim, reflects a procedural breakdown[.]" *Id.* at 11 (citing *U.S. Postal Serv. v. Unemployment Comp. Bd. of Rev.*, 620 A.2d 572, 573 (Pa. Cmwlth. 1993) (*USPS*)).[4] Further, Claimant maintains that his "ability to respond to [the Department's] notices was critically hindered by his military service, as he was in [b]asic [t]raining when the notice was issued and later stationed with limited freedom to resolve the issue." *Id.* Claimant asserts that "[t]his situation necessitates the consideration of legal protections afforded to servicemembers, such as those outlined in USERRA and SCRA,[5] highlighting the

---

[4] Claimant refers to this Court's decision in *USPS* by name, but fails to provide the corresponding legal citation. We presume that Claimant intended to reference the case cited above. We note the directive that argument in an appellate brief "shall . . . [contain] such discussion and citation of authorities as are deemed pertinent," and that such citations "shall be in accordance with [Appellate Rule] 126." Pa.R.A.P. 2119(a), (b); *see also* Pa.R.A.P. 126(a) (providing, *inter alia*, that "[w]hen citing authority, a party should direct the [C]ourt's attention to the specific part of the authority on which the party relies").

[5] Claimant presumably refers to the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301-4335 (USERRA), and the Servicemembers' Civil Relief Act, 50 U.S.C. §§ 3901-4043 (SCRA), respectively. "USERRA provides that returning servicemembers are to be reemployed in the job that they would have attained had they not been absent for military service . . . with the same seniority, status and pay, as well as other rights and benefits determined by seniority." *Your Rights Under USERRA*, U.S. DEP'T OF LAB., available at https://www.dol.gov/agencies/vets/programs/userra/aboutuserra (last visited Dec. 6, 2024). The SCRA affords servicemembers various forms of protection and relief, including protection from eviction, a cap on interest rates, and the opening of default judgments. *Military Compensation: SCRA*, U.S. DEP'T OF DEFENSE, available at https://militarypay.defense.gov/Benefits/Servicemem bers-Civil-Relief-Act/ (last visited Dec. 6, 2024).

This is obviously not a USERRA situation which deals with employment and reemployment. Rather, this is an appropriate case where the SCRA could have been invoked. Under 50 U.S.C. § 3932(a) a court or administrative body may *sua sponte* grant a stay, or the servicemember may apply for a stay. Since Claimant did not properly apply for a stay, his only conceivable argument is that the Referee abused his discretion by not imposing a stay *sua sponte*. While we are aware that such an argument is conceivable, Claimant does not make this argument.

need for procedural flexibility and equitable treatment in administrative processes." *Id.* Moreover, Claimant maintains that "his wife's repeated, unsuccessful attempts to access the [Department's] helpline and receive clear guidance" and "[t]he consistent unavailability of resources constitute[d] a significant administrative barrier[.]" *Id.* at 12 (citing *USPS*). Claimant insists that "[s]ubstantial miscommunication from [the Department], including incorrect claims about [his] employment history, led to confusion and a delay in filing an appeal."[6] *Id.* (citing *Stana v. Unemployment Comp. Bd. of Rev.*, 791 A.2d 1269 (Pa. Cmwlth. 2002)).[7] Thus, Claimant maintains that "[e]rroneous information from [the Department] regarding [his] employment, significant delays in receiving guidance, and the mismanagement of his queries while fulfilling military duties—compounded by [the] responsibilities of moving his family and caring for a newborn—strongly support the filing of an appeal *nunc pro tunc*." *Id.* at 13 (citing *Stana*).

The Board counters that Claimant fails to establish that an administrative breakdown within the Department justifies pursuing his tardy appeal *nunc pro tunc*. *See* Board's Br. at 6-14.

---

Claimant did not invoke the SCRA in the underlying matter and before this Court makes only a passing reference to it. Further, Claimant fails to articulate any abuse of discretion by the Referee in not staying the proceedings *sua sponte* in order that Claimant's October 26, 2022 appeal would be timely. As such, the SCRA cannot provide relief to Claimant under the circumstances of this case.

[6] Claimant presumably references the averment elsewhere in his appellate brief that the Department "erroneous[ly] communicated on July 15, [2022] that [he] had terminated his employment with [Employer] in February 2020—a year and a half prior to the actual resignation date in July 2021," and that this discrepancy "was the basis for the overpayment determination." Claimant's Br. at 8. As noted above, Claimant also testified that his "underemploy[ment]" during the weeks at issue caused the Department to assess the fault overpayment. C.R. at 99.

[7] As with *USPS*, Claimant referenced *Stana* by name only, without any legal citation. *See supra* note 5.

6

## III. Discussion

Section 501(e) of the Law provides that

> [u]nless the claimant or last employer or base-year employer of the claimant files an appeal with the [B]oard, from the determination contained in any notice required to be furnished by the [D]epartment under [this] section . . . , no later than [21] calendar days after the "Determination Date" provided on such notice, and applies for a hearing, such determination of the [D]epartment, with respect to the particular facts set forth in such notice, shall be final and compensation shall be paid or denied in accordance therewith.

43 P.S. § 821(e) (footnote omitted); *see also U.S. Postal Serv.*, 620 A.2d at 573-74 (explaining that "[t]he appeal provisions of the Law are mandatory," and that "failure to file an appeal within [21 days], without an adequate excuse for the late filing, mandates dismissal of the appeal").

However, "an appeal *nunc pro tunc* may be allowed when a delay in filing the appeal is caused by extraordinary circumstances involving 'fraud or some breakdown in the court's operation through a default of its officers.'" *Cook v. Unemployment Comp. Bd. of Rev.*, 671 A.2d 1130, 1131 (Pa. 1996) (citations omitted); *see also Hessou v. Unemployment Comp. Bd. of Rev.*, 942 A.2d 194, 198 (Pa. Cmwlth. 2008) (holding that a claimant "may satisfy th[e] heavy burden" of demonstrating entitlement to appeal *nunc pro tunc by* "show[ing] the administrative authority engaged in fraudulent behavior or manifestly wrongful or negligent conduct"). A claimant may also proceed *nunc pro tunc* upon establishing that "non-negligent conduct beyond his control caused the delay" contributing to the tardy appeal. *Hessou*, 942 A.2d at 198; *see also Criss v. Wise*, 781 A.2d 1156, 1160 (Pa. 2001) (stating that "[t]he exception for allowance of an appeal *nunc pro tunc* in non-negligent circumstances is meant to apply only in unique and compelling cases in

which the appellant has clearly established that []he attempted to file an appeal, but unforeseeable and unavoidable events precluded [him] from actually doing so"). "The burden to establish the right to have an untimely appeal considered is a heavy one because the statutory time limit established for appeals is mandatory." *Hessou*, 942 A.2d at 198.

Claimant appealed the Department's February 10, 2022 overpayment determination through the UC online portal on October 26, 2022, nearly eight months after the March 3, 2022 appeal deadline. C.R. at 47 & 108. Claimant maintains that an administrative breakdown in the Department supports an appeal *nunc pro tunc*, citing the Department's delayed response to his wife's initial inquiries in February 2022. Claimant's Br. at 11. He also contends that the Department's allegedly incorrect claims about his employment history led to confusion and his delay in filing an appeal.

However, the appeal instructions appended to the Department's February 10, 2022 determinations provided clear notice of the March 3, 2022 appeal deadline and detailed guidance on how to take an appeal. *See* C.R. at 25-26 & 35-38. Claimaint's assertions do not support his request for *nunc pro tunc* relief, as they could not have misled him regarding "the availability, timing or need for an appeal."[8] *Greene v. Unemployment Comp. Bd. of Rev.*, 157 A.3d 983, 992-94 (Pa. Cmwlth. 2017) (deeming *nunc pro tunc* relief unavailable where, although the claimant initially received "misinformation" regarding the deductibility of severance payments from UC benefits, "nothing in the record indicate[d] the [UC]

---

[8] Moreover, presuming that Claimant intends to reference the purported misinformation regarding his employment history communicated by the Department *in July 2022*, this communication could not have contributed to Claimant's tardy appeal *from the February 10, 2022 overpayment determination*.

8

representatives attempted to dissuade or discourage [the c]laimant from appealing the notice of determination"; reasoning "that not every misstatement by an apparently authoritative person will justify a *nunc pro tunc* appeal[, but] rather, the misinformation must relate to the availability, timing or need for an appeal").

Regarding Claimant's contention that restrictions on communication during basic military training during February and March 2022 "critically hindered" his ability to appeal the Department's determination, Claimant's Br. at 11, the Board determined that

> [e]ven assuming he had good cause to file an untimely appeal because he was in basic [military] training, [] [C]laimant returned from [] training on March 24, 2022 . . . . [Claimant] did not file an appeal of the [Department's February 10, 2022] determination[] until October 26, 2022. The delay of over six months after his return does not amount to good cause.

C.R. at 131-32. Nevertheless, Claimant insists that the "responsibilities of moving his family and caring for a newborn," combined with the purported administrative breakdown within the Department, support entitlement to *nunc pro tunc* relief. Claimant's Br. at 13. However, "[t]he pressure of life events is [] insufficient to excuse an untimely appeal. This Court consistently rejects such excuses." *See Carney v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 1286, 1288-89 (Pa. Cmwlth. 2018) (deeming a "[c]laimant's asserted stress and distraction from the birth of a child and starting a business legally insufficient to excuse his untimely appeal" to the referee); *Maloy v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwtlh., No. 1009 C.D. 2015, filed Apr. 13, 2016), slip op. at 1-2 & 7-9[9] (affirming dismissal of a

---

[9] Unreported memorandum opinions of this Court issued after January 15, 2008 may be cited for their persuasive value. *See* Section 414(a) of this Court's Internal Operating Procedures 210 Pa. Code § 69.414(a).

9

claimant's appeal to the Board as untimely on the basis that the claimant's homelessness and the loss of her brother did not constitute non-negligent circumstances excusing her untimely appeal, explaining that while the Court sympathized with the claimant's situation and her proffered reasons were "understandable," such reasons did not meet the heavy burden necessary for *nunc pro tunc* relief); *cf. Cook*, 671 A.2d at 1130-32 (holding that extraordinary, non-negligent circumstances justified *nunc pro tunc* consideration of a claimant's appeal to a referee that was tardy by four days and remanding for a hearing on the merits of the claim, where the claimant had collapsed and was hospitalized several days prior to an appointment with his attorney and was discharged from the hospital one day after the appeal deadline).

We reiterate Claimant's testimony that at some point during the summer of 2022, the Department "told [him via email] that [he] could appeal [] at that point, essentially." C.R. at 104. However, as emphasized by the referee and the Board, Claimant fails to explain his failure to file the appeal until October 26, 2022. *See id.* at 108, 110 & 131-32. We agree with the Board that Claimant failed to satisfy the heavy burden of establishing entitlement to *nunc pro tunc* relief by "show[ing] the [Department] engaged in fraudulent behavior or manifestly wrongful or negligent conduct." *Hessou*, 942 A.2d at 198.

## IV. Conclusion

For the foregoing reasons, we conclude that Claimant failed to satisfy the heavy burden of demonstrating that extraordinary circumstances permit him to appeal *nunc pro tunc*. *See Hessou*, 942 A.2d at 198; *Cook*, 671 A.2d at 1131.

Accordingly, we affirm the August 24, 2023 decision and order of the Board affirming dismissal of Claimant's untimely appeal.

_____

CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gabriel S. Flores,                  :
                 Petitioner     :
                                 :
          v.                     :
                                 :
Unemployment Compensation    :
Board of Review,                :    No. 1398 C.D. 2023
              Respondent    :

# **O R D E R**

AND NOW, this 9th day of December, 2024, the August 24, 2023 order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge